## Village of Wilmette v. Katherina Brachle.

1. INSTRUCTIONS—*Not Error to Refuse Instructions Where Their Substance is Contained in Others Given.*—It is not error to refuse to give instructions stating proper rules of law where their substance is contained in others given.

Village of Wilmette v. Brachle.

2. SAME—*Party Can Not Complain of an Error in His Adversary's Instruction Where the Same Error Appears in His Own.*—A party can not complain of an instruction given for his adversary when he has asked and has procured one of the same character to be given.

3. SAME—*Use of Word " His " in Instructions as to Witnesses Where There Are Both Men and Women.*—The word " his " as used in instructions as to witnesses is used in its generic sense, meaning each witness in the case, without regard to his or her sex.

4. SIDEWALKS—*Duty of City to Keep in Reasonably Safe Condition for Their Entire Width.*—It is the duty of a city to keep and maintain its sidewalks in a reasonably safe condition for their entire width.

5. SAME—*Pedestrian Has a Right to Presume that They Are Safe in All Parts.*—Unless he is charged with notice to the contrary, one has a right to presume that the walk is reasonably safe in all parts.

6. APPELLATE COURT PRACTICE—*Duty of Court Where There is a Contrariety of Evidence on Both Sides.*—Where there is a contrariety of evidence on both sides, and the facts and circumstances, by a fair and reasonable intendment, will warrant the inferences of the jury, courts will reluctantly, if ever, disturb their verdict, notwithstanding it may appear to be against the strength and weight of the testimony.

7. SAME—*Record Must Show that All Instructions Are. Set Forth Therein or They Will Not be Considered.*—Where the record does·not state that the instructions set forth therein as given are all the instructions that were given to the jury, this court will presume the action of the court concerning the giving and the refusing of instructions was correct.

8. DAMAGES—*Where Appellate Court Will Set Aside Finding of Jury on Sole Ground that the Judgment is Excessive.*—A court of review seldom sets aside the finding of a jury upon the sole ground that it is excessive, unless the amount is so great as to shock its sense of right.

9. SAME—*When $8,500 Not Excessive.*—Plaintiff, before her injury, was in the enjoyment of good health; she did her own work and sewed for others; since then she has not been able to sew and can do but little housework. Her right hand and arm are almost completely paralyzed; that arm is wanting in sensation and the hand has no grasp; this paralysis involves the right leg; the only way she can move that leg is by a swing of the body; the muscles of the arm are atrophied, and the ligaments that hold the joints together are gone; the muscles that support the shoulder blade are practically gone; this paralysis to a certain extent includes the entire left half of the body; her head aches constantly. She may get better, but will never be permanently cured. *Held,* that $8,500 is not so excessive as to warrant a reversal.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed November 12, 1903.

Appellee brought suit against appellant to recover damages for injuries she sustained October 28, 1900, from a fall caused by a defective sidewalk. Appellee, a married woman about forty-five years of age, passed along the sidewalk Sunday morning on her way to church. After the service, and on her way home, she again traversed the walk. With her were two other women. The three were walking abreast, appellee being on the inside edge of the walk, Mrs. Calkins in the middle, and Mrs. Arndt on the outside edge. The walk was constructed of boards laid crosswise, nailed to stringers running lengthwise. When the place of the accident was reached Mrs. Arndt stepped on the end of one of the boards, which was not securely nailed to the stringers. It sunk down, throwing the other end up. Appellee caught her toe upon this raised board and was thereby thrown violently upon the edge of the walk, and from there rolled to the ground. Her companions helped her up. She sat down a few minutes and then walked home, a distance of about three-quarters of a mile, without assistance. Before this accident her health had been good. Since then she has become crippled; the entire right side of her body is paralyzed, the sense of feeling in the right arm is almost wholly wanting, many of the muscles of that side are wasted away, and her condition seems to be permanent.

On the trial of the cause a verdict was rendered finding appellant guilty, and assessing the damages of appellee at the sum of $8,500. From such judgment this appeal was perfected.

J. L. McKITTRICK and GEORGE GILLETTE, attorneys for appellant.

O'BRIEN & McKINLEY, attorneys for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

Appellant says that the verdict is not justified by the evidence, and that under the facts, as shown by the record, there can be no recovery.

The way in which the accident occurred is not in dispute. But it is alleged that appellant, a short time before the accident, repaired this walk at the point where it happened, and had no notice after such repair and before the accident that the walk was there out of repair. The law is, that appellant was not an insurer against accident to persons passing along its sidewalks. If it had been reasonably diligent in keeping its sidewalks in a reasonably safe condition for travel, it is not responsible for a defect therein, although such defect is the cause of an accident. This rule is so well established that the citation of authorities to sustain it is unnecessary.

The evidence shows that this wooden sidewalk was laid down eleven years before the accident, and that the ordinary life of such a walk is about eight years. It had been repaired two or three times a season. The witness Hoth, called by appellant, says that he and Fisher "made repairs on the sidewalk on Lake avenue, about twenty to twenty-five feet east of Seventeenth street," about a week or ten days before the accident, and that when they got through "the boards were nailed tight, and were not shaky. We put stringers about twenty feet under there, where we fixed the walk, commencing right near the lamp-post at Seventeenth street, and going east; that was on both sides of the walk; that is as far as we went. We did not do any repairing east of that patch." He further says that east of there the walk was in good order. "We did not look under the boards as long as they were nailed." "Before then the first twenty feet of the walk was kind of wiggly on both sides; shaky; the stringers under it were rotted away." The witness Fisher testified that he helped Hoth repair this walk "two weeks" before appellee was hurt. "Before we fixed the sidewalk it was kind of bad; some boards were loose, and we put in about twenty feet of repairs, commencing at the corner of Seventeenth street; we repaired east of that all the way, but did not put in any more new lumber for the next ten or fifteen feet east of that point."

George W. Rogers, Superintendent of Public Works, says repairs were made on that sidewalk within fifty feet east of Seventeenth street about October 20, 1900. "I put one stringer under there right where this woman says she fell." This was about twenty-five feet east of Seventeenth street, perhaps a little more. "At that time the boards were sound and were nailed to the stringers. They were firm and the stringers were sound enough to hold nails." The stringer he put in was eight feet long, and he placed it under the south side of the walk.

H. W. Janaes, called on behalf of appellee, swears that he traversed this sidewalk every Sunday; that he noticed either the Sunday or the second Sunday before the accident a loose plank about twenty-five feet east of Seventeenth street, and another about twenty-five feet east of that.

J. M. Bate says that about twenty-five feet east of Seventeenth street the boards in this sidewalk were loose, "and if you stepped too far on either side they were apt to tilt up and throw the other end up. I should say that it was that way up to the 28th of October;" and that this was its condition during that summer.

John Schinler testified that "there were several planks loose in the walk on the sides, and in the center they were tight;" and that this condition existed for two or three weeks prior to the accident.

Peter Scheldgren swears that he noticed loose boards in the walk during the week previous to the accident; "I recollect that because I crossed it every week." * * * "The spot I refer to is within twenty-five or thirty feet of Seventeenth street north of the north side of Lake avenue; the trouble at that time was loose planks on the sidewalk there, and they were all in one place; took two of them up and threw them alongside of the walk. The two boards that I took out were loose and the other two were loose at the ends and fastened in the middle; they were nailed to the center stringers and I did not take them out; it was twenty-five to thirty feet from the corner of Seventeenth street."

Mrs. Arndt, who was with appellee at the time of the accident, says:

"This happened on the north side of Lake avenue, near Seventeenth street, about twenty-five feet from Seventeenth street."

Appellee swears:

"When I came near Seventeenth street there stood Mrs. Arndt waiting for me, and we started on to walk; and after walking about twenty-five feet Mrs. Calkins caught up with us and stepped right in between, and we walked a few steps, maybe five or ten, and Mrs. Arndt stepped on a board," etc.

It will be seen that there is a direct conflict in the evidence as to the condition of this walk at the point where the accident happened. The evidence of appellant tends to show a repair of the walk at this spot within ten days prior to the injury, and that no notice of its after-want of repair came to the knowledge of the village authorities. The testimony of appellee tends to show that at the point where she fell the walk had been out of repair and in an unsafe condition for a long time prior to and up to the date of the accident. The place of the accident is not definitely fixed. Mrs. Arndt says it was twenty-five feet east of Seventeenth street. Appellant's description would put it from ten to twenty feet further east. The repairs made by Hoth, Fisher and Rogers extended no further east than twenty-five feet from Seventeenth street. Beyond that they added nothing, but saw, as they say, the boards were nailed firmly to the stringers. The duty of an appellate tribunal, where it is alleged that the verdict is against the weight of the evidence, is clearly stated in Lowry v. Orr, 1 Gilm. 70, 83:

"The rule of law is well established, that, in cases where the verdict of the jury has been given contrary to the evidence, or where there is no evidence at all to support the verdict, the court will interfere and relieve the party prejudiced by such finding, by the granting of a new trial. But where there is a contrariety of evidence on both sides, and the facts and circumstances, by a fair and reasonable intendment, will warrant the inferences of the jury, courts

will reluctantly, if ever, disturb their verdict, notwithstanding it may appear to be against the strength and weight of the testimony."

In Calvert v. Carpenter, 96 Ill 63, 68, after stating the disability under which a reviewing court labors in having before it nothing more than " the cold words of the witness as transcribed in the record," and in not seeing and hearing the witness, says :

" For this reason the rule is firmly established, that where, as in this case, there is an irreconcilable conflict in the testimony, this court will not reverse the judgment of the trial court, where the evidence of the successful party, when considered by itself, is clearly sufficient to sustain the verdict."

In Shevalier v. Seager, 121 Ill. 564, 569, after citing many cases where the rule is stated in differing forms, yet always practically amounting to the same thing, the court say :

" The truth is, the rule could not be otherwise without invading the province of the jury to determine the credibility of witnesses, and to say which of them are to be believed in case of a conflict.   To do this would be to dispense with the essential functions of a jury, and thus destroy its utility altogether."

There is here a direct conflict in the testimony as to the condition of that sidewalk at the time and place of the accident, and the evidence of appellee, considered by itself, if believed by the jury, is clearly sufficient to sustain the verdict.   We are therefore compelled to rule against appellant upon this point.

The second claim of appellant is that the trial court erred in refusing to give to the jury appellant's third, fourth and fifth instructions.   These instructions are practically the same.   Each one states, in effect, that if appellant, within ten days before the accident, had properly repaired the walk, and had no actual notice thereafter of any defect therein, or sufficient time had not elapsed between the defect and the accident in which appellant might have known it and repaired it, then appellant was not liable. The court gave to the jury nineteen instructions tendered

by appellant, in which the law governing this case is fully and fairly stated. The court might have safely added these three refused instructions to the long list already given; but its refusal so to do is not reversible error, for the reason that the substance of each of these refused instructions is found in appellant's instructions given and numbered 5, 7, 8, 10 and 11.

The third claim of appellant is that the giving of appellee's instruction number 3 was error. It reads as follows:

" The court instructs the jury that if you believe from the evidence that the sidewalk in question was a public walk in the village of Wilmette, then the plaintiff had the right, at the time in question, to pass over said walk on foot, and the mere fact, if it is a fact, that she passed over it before, should not of itself deprive her of the right to recover in this case, if the jury believe from the evidence that the defendant village is guilty of the negligence alleged in the declaration, and that the plaintiff was, at and before the time of the accident, in the exercise of ordinary care for her own safety."

Appellant says that the conduct of appellee in walking along the inner edge of the sidewalk was negligence; that even if nothing indicated that the walk was insecure, she had no right to assume that every plank was so firmly fastened as to prevent one of them from becoming slightly displaced or tilted on account of the weight of herself or of her companion walking on the outer ends of the boards; that the instruction told the jury as an absolute matter of law, that appellee had the right at the time of the accident to walk where she did, and that this was an invasion of the province of the jury; and that such instruction singles out a particular item of evidence and tells the jury that that evidence alone does not deprive her of the right to recover, thus excluding from the consideration of the jury other evidence bearing upon the case.

There is no direct evidence showing that appellee walked on the edge of the planks projecting over the stringers. If she did, that was not the cause of her injury. She tripped upon a plank which was thrown up, not by her weight, but by the weight of Mrs. Arndt. Even if it be admitted that

she did travel along the edge of the sidewalk, appellant is not thereby advantaged, for in the absence of knowledge that such act is dangerous by reason of the disrepair of the walk, one may travel along any portion of its width; for it is the duty of appellant to keep and maintain its sidewalks in a reasonably safe condition for their entire width. (City of Springfield v. Burns, 51 Ill. App. 596.) Unless he is charged with notice to the contrary, one has a right to presume that the walk is reasonably safe in all parts. Strehmann v. City of Chicago, 93 Ill. App. 208, and cases cited; City of East Dubuque v. Burhyte, 173 Ill. 558.

Appellant in each of its given instructions, Nos. 8 and 9, singles out a particular fact, and instructs the jury that although they find that fact, it alone is not sufficient to enable appellee to recover. The rule is well settled that appellant can not complain of an instruction given for appellee when he has asked and procured one of the same character to be given. L. S. & M. S. Ry. Co. v. Conway, 169 Ill. 507.

The fourth error alleged is that of giving appellee's instruction numbered 4. It reads:

"The jury are instructed that if you believe from the evidence that any witness has willfully sworn falsely on the trial as to any matter or thing material to the issues in the case, then you are at liberty to disregard his entire testimony except in so far as it may have been corroborated by other creditable evidence or by facts and circumstances proved on the trial."

The criticism is upon the use of the word "his;" that by its use the women witnesses are excluded from its operation. The word is used in its generic sense, meaning each witness in the case, without regard to his or her sex.

There is a general answer which applies to each and every objection to any instruction, the giving or refusing of which is assigned for error, i. e., the record does not state that the instructions set forth therein as given are all the instructions that were given to the jury. In the absence of such a statement it is elementary that we must presume

the action of the court concerning the giving and the refusing of instructions was correct.

The last claim of appellant is that the damages are excessive. They are large, and if the case had been submitted to us in the first instance and we had found that appellee had a right to recover damages, it is probable we would not have fixed them at a sum as high as did the jury in this case.

Before this injury appellee was in the enjoyment of good health. Dr. Stolp says he has been her family physician for nineteen years, but had attended her in confinement cases only. Before her injury she did her own work and sewed for others; since then she has not been able to sew and can do but little housework. Her right hand and arm are almost completely paralyzed; that arm is wanting in sensation and the hand has no grasp; this paralysis involves the right leg; the only way she can move that leg is by a swing of the body; the muscles of the arm are atrophied, and the ligaments that hold the joints together are gone; the muscles that support the shoulder blade are practically gone; this paralysis to a certain extent includes the entire left half of the body; her head aches constantly. She may get better, but will never be permanently cured.

The case was fairly and deliberately tried; the jury was fully instructed as to the law governing the facts; and no passion or prejudice upon the part of the jury appears, unless it is to be implied from the amount of the verdict. The learned judge before whom this case was tried heard and saw all the witnesses and listened to the comments of counsel upon the evidence. The question whether or not the verdict is excessive was before him on the motion for a new trial. In entering judgment upon the verdict he necessarily decided that the amount thereof is not excessive. The jury are primarily the sole judges of the amount of damages in a case like this. A court of review seldom sets aside their finding upon the sole ground that it is excessive unless the amount is so great as to shock its sense of right. In cases like the one at bar we have not the power to

guess what sum less than that found by the jury would reasonably compensate appellee for the injuries she has sustained. Town of Wheaton v. Hadley, 30 Ill. App. 568; W. Chi. St. Ry. Co. v. Shiplett, 85 Ill. App. 685.

The judgment of the Circuit Court is affirmed.