Thomas Roberts, Administrator of Estate of Marjorie Roberts, Deceased, Appellant, v. Joseph Cipfl, Appellee.

Opinion filed March 2, 1942.

WALTER KASSLY and BEASLEY & ZULLEY, all of East St. Louis, for appellant.

KRAMER, CAMPBELL, COSTELLO & WIECHERT and NORMAN J. GUNDLACH, all of East St. Louis, for appellee.

MR. PRESIDING JUSTICE STONE delivered the opinion of the court.

Thomas Roberts, administrator of the estate of Marjorie Roberts, deceased, appellant (hereinafter designated as plaintiff) instituted this suit at law in the city court of East St. Louis, seeking to recover damages against Joseph Cipfl, appellee (hereinafter designated as defendant) for his alleged negligence in an automobile collision, resulting in the death of his 21-year-old daughter, Marjorie Roberts. The case was tried by the court without a jury, on May 28, 1941, and taken under advisement by the court. On the 13th of June, 1941, the court found that the plaintiff had failed to prove his case, as alleged in his complaint, by a preponderance of the evidence, and found that defendant was not guilty of the negligence nor of the wilful and wanton misconduct charged against him in said complaint, and judgment was entered in favor of defendant and against plaintiff in bar of the

action. From that judgment appeal is prosecuted to this court.

The uncontroverted and undisputed facts in the case are to the effect that on June 30, 1940, at about 2:30 in the morning plaintiff's intestate, Marjorie Roberts, was riding, as an invitee in an automobile coupe with a young man by the name of Thomas Rust. Rust was driving east on College avenue, which is a through street in East St. Louis. College avenue is intersected by North Fourteenth street, which runs in a northerly and southerly direction. There was a boulevard "Stop" sign on the southeast corner of College and North Fourteenth, for traffic entering College avenue. Defendant was driving a Mercury Eight automobile north on North Fourteenth street.

Rust testified that he was driving his car at about 15 or 20 miles an hour, that when he first saw defendant's car he judged his own car to be about two feet from the intersection, at which point he claimed that he was able to see to his right on Fourteenth Street, and that defendant's car was about 80 feet down the street. Rust estimated the rate of speed of defendant's car at 65 or 70 miles an hour, that he did not slacken his speed, gave no signal or warning of any kind, and did not stop at the boulevard "Stop" sign, on the south side of the street. The automobile driven by Rust was first in the intersection. Rust had a right to assume that defendant, approaching a through street, where there was a boulevard "Stop" sign, would stop at that street, before entering the intersection. A person has a right to presume that other parties will obey the statutes and ordinances in force in a given place. *Dukeman v. Cleveland, C., C. & St. L. Ry. Co.,* 237 Ill. 104, 86 N. E. 712; *Potter v. Chicago, M. & St. P. R. Co.,* 208 Ill. App. 363; *Lund v. Osborne,* 183 Ill. App. 63; *Johnson v. Illinois Cent. R. Co.,* 165 Ill. App. 19.

When Rust saw that the two cars would collide, he started to turn to the left, and applied his brakes. His right front fender and the left front fender of defendant's car hit, and Rust's car, from the force of the impact spun around, and plaintiff's intestate was thrown from the machine, sustaining fracture of the skull and lacerations of the brain, from which injuries she died a few days later.

Three witnesses testified for the plaintiff, Rust, who was the only eye witness testifying, the father of the deceased girl, who testified with reference to the loss of the girl's services as housekeeper, and Dr. V. P. Siegel, who testified as to the girl's injuries and resultant death. For the defendant, Forrest Crawford, commercial photographer testified and identified six pictures taken by him. Defendant's Exhibit 1 showed College avenue looking west; Exhibit 2 showed North Fourteenth street, looking north; Exhibit 4 pictured Rust's damaged automobile; while 5 and 6 were pictures of defendant's damaged automobile. Defendant Joseph Cipfl was offered as a witness in his own behalf, objection was made that plaintiff was suing in a representative capacity, which was sustained by the court. Same objection was made and sustained as to the wife of defendant. So that in substance the only evidence in the record on behalf of the defendant were the six photographs.

The principal error relied upon for reversal by the plaintiff is, that the judgment of the trial court is against the manifest weight of the evidence.

It is contended on behalf of the defendant that there was only one question involved in the case and that was whether or not defendant was guilty of negligence that proximately caused the death of plaintiff's intestate. With that statement, we are more or less inclined to agree. It is contended that the visual evidence adduced by the pictures of the scene of the accident and the automobiles involved form a sub-

stantial basis for the court's decision in finding that the defendant was not guilty of the negligence charged against him. It is claimed that the testimony of Rust is impeached by the physical facts and the pictures introduced in evidence by defendant.

We have examined these exhibits carefully and find nothing therein that meets the eye that would convince the mind that these pictures either of the scene of the accident or either damaged car, contradict the testimony of the one eye witness, whose testimony is in the record of this case. If there is anything that stands out, in the pictures of the scene of the accident, it is the fact that as defendant approached the intersection of College and North Fourteenth streets, the boulevard "Stop" sign was almost directly in front of him and that he was driving his car in a residential section of the city, where the operation of his car in excess of 25 miles an hour would be prima facie evidence that he was operating his motor vehicle at a rate of speed greater than was reasonable and necessary, having regard for the traffic and use of the way. Chapter 95½, section 146, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 85.178]. The picture of the two cars also, it seems to us, corroborates the testimony of Rust, when he stated that the right front fender of his car and the left front fender of defendant's car hit.

*Ridgway v. Illinois Cent. R. Co.*, 303 Ill. App. 224, is cited by counsel for defendant, in support of their contention that the physical facts in the case, as shown by the pictures would be sufficient to sustain the judgment of the court, in finding for the defendant. The *Ridgway* case was a railroad crossing collision case, and judgment for plaintiff was reversed as against the manifest weight of the evidence because the photographs of the railroad crossing showed a clear and unobstructed view of the track for a great distance and the motorist would have seen the train had he looked. This was an entirely different situation.

There the trial court was not asked by looking at pictures, to determine the motion of the train, or the movements of the automobile.

In a case tried by the court without a jury the finding of a trial court has no greater weight than the verdict of a jury and will be reversed where it is against the manifest weight of the evidence. *Israel v. Selman,* 263 Ill. App. 351; *Feldman v. Karn,* 247 Ill. App. 48; *Feucht v. Clarke,* 299 Ill. App. 477. The judgment for the defendant in this case, being contrary to the manifest weight of the evidence, will be reversed and remanded, for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*