Ida L. Wilson et al., Appellees, v. Chauncey Moffett Bell et al.
Appeal of Chauncey Moffett Bell, Individually and as Executor, Appellant.

Gen. No. 41,941.

Heard in the third division of this court for the first district at the October term, 1941. Opinion filed June 24, 1942.

CLARENCE M. DUNAGAN, of Chicago, for appellant.

COLLINS, McKENNA & McCULLOUGH, of Chicago, for appellees; JOSEPH B. LOFTON, WILLIAM J. GLEASON and P. E. McCULLOUGH, all of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by Chauncey Moffett Bell, individually and as executor, from a decree that was entered by the court upon a verdict of a jury in a will contest case. Mary Shelton Leonard died in Cook county, Illinois on March 27, 1939. She was a widow of about seventy years of age and while she had executed a previous will and codicil, there was in existence at the time of her death, a document which was probated as her last will and testament, and that document bore the date of October 26, 1938—approximately five months prior to her death.

This suit was commenced by Ida L. Wilson, a second cousin of the decedent, and one who was named as a beneficiary in the prior will, as well as in the will in question in this suit. The court sustained a motion to strike the complaint on the ground that plaintiffs were not proper parties to the suit and did not have legal capacity under the statutes to commence the action. Leave was given to file an amended complaint,

which first amended complaint was likewise stricken by the court and leave given to file a second amended complaint. The second amended complaint was ordered stricken and leave given to file a third amended complaint. The third amended complaint was likewise filed by Ida L. Wilson and others named as plaintiffs, and it named as defendants certain alleged heirs known and unknown, who had not joined in as plaintiffs in the complaint.

The will is pleaded in the complaint as an exhibit and among its provisions bequeaths and devises the rest and residue and remainder of her property one third to the plaintiff, Ida L. Wilson, one third to Chauncey Moffett Bell, and one third to E. Kelvelage (another of the plaintiffs), share and share alike.

The court overruled defendant's motion to strike the third amended complaint which was the fourth pleading that they had filed in the case, and defendant filed his answer denying all of the affirmative allegations in the answer required to be denied to make up the issues and specifically alleged in paragraph thirteen that Ida L. Wilson, one of the plaintiffs, and the actual plaintiff, was not an heir-at-law or next of kin of Mary Shelton Leonard, and that none of the plaintiffs, including Ida L. Wilson, have a sufficient interest in the will to be "parties in interest" within the meaning of the statute, and therefore have no right to maintain this action and pray that the cause be dismissed at plaintiff's costs. No reply was filed, and the case went to trial before the court and jury on the third amended complaint and the defendant's answer thereto.

The third amended complaint of plaintiffs, upon which issue was joined alleged that on November 22, 1937 Mary Shelton Leonard made an instrument in writing to be her last will and testament and the plaintiffs were each thereby benefited by various bequests and devises and that thereafter on December 30, 1937 the testatrix made a codicil remaking and republishing

the will of November 22, 1937; said amended complaint then alleged that thereafter on October 26, 1938, the testatrix made a purported last will revoking the former will and codicil and that thereafter the testatrix died on March 27, 1939.

The fourth paragraph of the complaint sets up the interest of the contestants in this writing:

"That the purported last will and testament of October 26, 1938, purports to revoke and annul the last will and testament of November 22nd, 1937, and the said codicil of December 30th, 1937, wherein and whereby the plaintiffs had each a pecuniary benefit to exceed that granted by the said purported last will and testament of October 26th, 1938, and the plaintiffs are, therefore, persons interested within the meaning of Section 7 of an Act in Regard to Wills, Chapter 148, Section 7, Smith-Hurd Annotated Statutes."

The complaint further alleged that at the time of the making of the will of October 26, 1938, the testatrix was not of sound mind and memory and wholly incapable of making any last will and testament and was subject to the undue influence of Chauncey Moffett Bell and that by such undue influence he procured the making of the will of October 26, 1938. The complaint prayed that the instrument of October 26, 1938 and the probate thereof be declared null and void and that the same was not the last will and testament of Mary Shelton Leonard, deceased.

The defendant Bell, proponent of the will, answered, and after the verdict of the jury in favor of contestants, moved for a new trial and in arrest of judgment. The motions were denied and the court entered a decree in conformity with the jury's verdict.

The defendant first contends that the plaintiffs are not "parties in interest" under the statute and do not have legal capacity to prosecute this suit. This point was raised in the trial court in defendant's motion to strike, but plaintiffs urge that he has not preserved

that motion in his abstract other than by the bald statement that such motion was entered and continued. It appears that that motion was overruled. The defendant, under his contention that plaintiffs are not "parties in interest," says that under the common law, an action to contest a will was unknown, and under the statute law which provides for contests of this character, the statute must be strictly complied with, and that under such statute as we have in force in Illinois, an action to contest a will can be brought only by a "person interested," and that interest must have existed at the time the will was admitted to probate. It is argued that interest is essential to enable a person to contest a will and such "persons interested" are those who would share in the estate in case of intestacy, such as an heir-at-law or next of kin, and further that the interest must be a direct pecuniary interest affected by the probate of the will and persons without such interest have no right to contest. (*Kane v. Hudson,* 273 Ill. 350; *Jele v. Lemberger,* 163 Ill. 338; *Harney v. Wilson,* 198 Ill. App. 477.) Section 7 of "An Act in regard to Wills," sec. 7, ch. 148, Ill. Rev. Stat. 1939, provides in part as follows:

". . . that if *any person interested* shall within one (1) year after the probate of any such will, testament or codicil in the County Court as aforesaid, appear and by his or her complaint in chancery contest the validity of the same, an issue at law shall be made up whether the writing produced be the will of the testator or testatrix or not, which shall be tried by a jury in the Circuit Court of the county wherein such will, testament or codicil shall have been proven and recorded as aforesaid, according to the practice in other civil cases; . . ."

The plaintiffs were legatees under the will of November 22, 1937. In that will the defendant was given half of the household furniture, furnishings and effects and the sum of $3,000 as well as one third of the residue.

The real estate was not specifically devised but would pass as a part of the general estate. Under the will which was contested, however, defendant was given not only half of the household furniture, furnishings and effects but also the sum of $10,000 as well as the house and one third of the residue. At the time of the making of the contested will the whole value of the testatrix's personalty was $13,650 and cash in the sum of $241.81, the real estate being valued at $7,000. The first will distributed bequests of $17,700. The contested will distributed bequests of $20,500, the defendant's portion being increased by all of the real estate and an increase of $7,000 in his cash bequest to the detriment of the legatees under the original will.

It is to be noted from the statute above quoted that the section is not limited to ''heirs at law'' but qualifies any person ''interested'' in said estate to file the complaint to contest. This question was considered by the Illinois Supreme Court in the case of *Adams v. First M. E. Church of Irving Park,* 251 Ill. 268, where the legatee of a prior will filed a bill to set aside a later will which purported to revoke the former. There the court said:

''The first question to be determined is whether the complainant had a right to file the bill. The Court decided that he had, and the ruling is questioned by a cross-error. The statute authorizes any person interested to contest the validity of a will by his or her bill in Chancery, and if the complainant was interested, within the meaning of the statute, he had a right to file his bill. It is not denied that he would have had such a right but for the order of the probate court denying probate of the will in his favor. Counsel say that he should not have presented the will for probate, or should have withdrawn his petition or had it continued until the validity of the later will was finally adjudicated or appealed from the decision of the probate court. We do not see how his position would have been any better

if he had taken either course suggested. . . . The complainant had a substantial interest in the subject matter of his bill, and the court did not err in the ruling.'' It was further said in *Wolf v. Bollinger,* 62 Ill. 368;

''We see no reason for confining this privilege of contesting the validity of a will to heirs-at-law, as it is claimed in the argument it should be. The right is given to 'any person interested,' which may embrace a devisee, as well as an heir-at-law.'' The meaning of the words ''any person interested'' in section 7 of the Wills Act has been stated in *Cassem v. Prindle,* 258 Ill. 11, as follows; ''. . . The words 'any person interested,' mean any person who has a direct, existing, pecuniary interest which will be detrimentally affected by the probate of the will . . . Appellant, Maggie A. Cassem, had such an interest and had the right to file this bill. Her interest existed at the time the will of Richard Terry was admitted to probate, and it was a pecuniary interest which was vitally affected by the probate of the will. While she was not an heir-at-law or a devisee of Richard Terry, she was a remote grantee of an heir-at-law by virtue of conveyances made before the will was admitted to probate, and was such an interested person as was entitled to maintain this suit.'' In the instant case both wills were introduced in evidence and from them it is apparent that the favoring of defendant by the contested will operated to the direct, existing pecuniary detriment of plaintiffs. We are of the opinion that the plaintiffs were ''persons interested'' and as such had a right to maintain this suit.

The next question which we have for consideration is whether the court erred in the admission of evidence or in refusing to admit competent evidence, and whether the verdict of the jury is supported by the preponderance of the evidence. The rules of law governing the requirements for testamentary capacity are recited in plaintiffs' brief as being: That to have testamentary capacity the testator does not have to be absolutely of

sound mind and memory in every respect, but all that is required is that at the time of executing the will he had sufficient mental capacity to comprehend and remember who are the natural objects of his bounty, to comprehend the kind and character of his property and the particular business in which he is engaged when making a will, and to make disposition of the property according to some plan formed in the mind; that mere eccentricity does not constitute unsoundness of mind, and age, sickness or debility of body does not affect the capacity to make a will if the testator has sufficient intelligence remaining to make the will; that a person may be of unsound mind and memory to some extent and still be competent to make a will; that physical and mental weakness due to old age will not necessarily render one incompetent to make a valid will, and if a testator has sufficient mental capacity to knowingly and understandingly dispose of his property and distribute it to those to whom he intends it to go, he is competent to make a will; and extreme old age and feeble health combined with a defective memory and mental sluggishness do not render a testator incapable of making a will unless his mind has become so impaired that he is incapable of understanding the business of making a will while he is engaged in the act. We are quite in agreement with the foregoing rules as stated as being the law of this State. Applied to the different and varying facts in the respective cases in which the Supreme Court has spoken, it gave legal reason for the opinions in those cases; but the defendant has done little to apply the reasoning of those cases to the case at bar.

Three things are complained of in defendant's second point; one, that the court erred in the admission of incompetent evidence; two, that the court erred in refusing to admit competent evidence; and three, that the verdict of the jury is against the manifest weight of the evidence. It is pointed out that defendant's brief makes few page references to the abstract, and that no

objection was interposed by defendant to the rulings of the court now complained of on the admission of evidence. As to the court's refusal to admit competent evidence, plaintiffs state that "we find not a single place in the brief where counsel specified any evidence which he sought to introduce and which the court refused to admit. We might add that Counsel for defendant apparently does not seriously contend that any prejudicial error resulted from the admission or exclusion of evidence." Furthermore, in the course of the argument, defendant's counsel has not cited a single page in the abstract where an objection to the evidence complained of was interposed, and in his conclusion he has abandoned all reference to this complaint regarding the admission of evidence. And, of course, it is a familiar rule that where the abstract fails to show that objection was made to the admission of testimony at the trial no advantage can be taken of such matter in the reviewing court. (*Schachtrup v. Hensel,* 295 Ill. App. 303.) Upon the record, therefore, we find nothing which would justify this court in reaching the conclusion that the trial court erred in admitting incompetent evidence or refusing to admit competent evidence.

Upon the question of whether the verdict of the jury is against the manifest weight of the evidence, plaintiffs point out as a fact that in the review of the testimony of the witnesses produced by plaintiff, the defendant has repeatedly committed error in abstracting the testimony, and then used these errors as the basis for fallacious argument; and plaintiffs say that if they ignore the errors, they do so at their peril, and if they point them out and argue them, they are adding to the confusion which apparently it has been the attempt to create. The first witness whose testimony is discussed in defendant's brief is the witness Bertha Titus. This witness testified that she had known testatrix for about 50 years, and during that time up to 1937 the testatrix had a splendid reputation in the community for moral-

ity, living according to the recognized social standards. In defendant's brief it is stated that "Up to 1907 she said the testatrix had a splendid reputation in the community for morality, and she did not indicate anything that would affect that reputation at any later date. It would appear that from 1907 she saw little or nothing of the testatrix until in the fall of 1938 when she had a conversation of some three hours' length with Mrs. Leonard late in August or early in September, and stated that it could have been October in 1938." The brief gives no abstract page in which the testimony referred to can be found, and—as stated by plaintiffs—by the very simple device of transcribing the true date "1937" to read "1907" defendant gives the witness' testimony an entirely different meaning. It appears from the briefs that defense counsel next states that the witness was erroneously permitted to testify that the witness had an opinion "that she was not competent," and seeks to bring the facts within the ruling in the case of *Simpson v. Anderson,* 305 Ill. 172. Reference to the abstract reveals that the witness did not state whether she thought the testatrix capable of making a will as was done in the *Simpson* case, nor did she state "that she was not competent" without further qualifications. It does appear that she had an opinion as to whether or not the testatrix was of sufficiently sound mind and memory to know the value of her property and to carry on the ordinary affairs of business, and that that opinion was that she was not competent. Thus it appears that this witness did not give her conclusion with respect to the ultimate issue the jury was to try. Further, it is pointed out by plaintiffs that, throughout the abstract of the testimony of this witness, there appears only one objection which defendant made to the testimony of the witness. The witness in testifying used the word "flighty" whereupon defense counsel moved to strike out the word "flighty" and the court sustained his motion.

The next witness, Elizabeth Mann, of whose testimony defendant complains, identified a letter received from testatrix in November 1938. It is contended that the witness attempted to testify concerning the contents of the letter, which the court refused to permit to be received in evidence because it was written after the date of the execution of the will in October 1938; but it would appear from the abstract that she was not questioned nor did she attempt to testify in any manner with respect to the contents of the letter. The defendant next complains that the witness, Elizabeth Mann, was erroneously permitted to testify that the handwriting of Mrs. Leonard on the letter written after she executed the will and which was not admitted in evidence, indicated a great change of mental state on the part of Mrs. Leonard between the dates of the signature on the letter and the signature on some canceled checks which were shown to the witness. All of this testimony, it is pointed out, was elicited by defense counsel on cross-examination and over the objection of plaintiff's counsel. If he wished to have the answer stricken it does not so appear in the record, so we must assume that he was satisfied with the answer at the time of the trial. In any event he cannot assign error because the trial court was given no opportunity to rule on the objection that is now raised for the first time. (*Bartlow v. Chicago, B. & Q. R. Co.*, 243 Ill. 332.)

The next witness to be considered, Arthur D. Welton, was first called as a witness for defendant in connection with his case in chief. He was called by proponent of the will for the purpose of establishing the mental condition of testatrix at the time of the signing of the will in issue. The witness was also called by plaintiffs as a part of their case in chief, for the purpose (as stated by plaintiffs) of: First, to establish the interest of some of the plaintiffs in the case, Mr. Welton being a witness to a prior will executed in 1937; and second, to answer a charge wrongfully made by counsel for defend-

ant in his opening statement that he would prove that plaintiff's attorneys were not authorized by any of the plaintiffs to institute this action. Complaint is made by defendant as to the testimony of the witness Welton to the effect that he was associated with the firm of Winston, Strawn and Shaw, that he prepared the will in question, and that Mr. McCullough, who represents Mrs. Ida Wilson of New York (one of the plaintiffs) was recommended by Mr. Strawn. The court ruled that the testimony would be admitted for the reason that counsel for defendant had made the charge in his opening statement, and we believe such admission was not error. Defendant quotes from the testimony of this witness ''At the time I signed my name as a witness to that instrument, I believed she was of sound mind and memory''; however, it appears that this testimony was not with reference to the will in issue, but to a prior will of 1937 (the only will which the witness, Welton, signed as a witness). Upon cross-examination of this witness by plaintiff's counsel he testified that he recollected only the changes made with respect to the money and property in favor of defendant Bell. With regard to article 5 of the will in issue, he testified that he did not discuss with Mrs. Leonard whether or not Chauncey Bell was her friend or her husband, and that he had no express instructions from testatrix with respect to such language; that his knowledge did not extend to any marriage between Mrs. Leonard and Mr. Bell. He did testify that he had an opinion at the time of testifying that she was not competent to make her will, although on direct examination he testified that at the time he drew the will he had an opinion that the testatrix was of sound mind and that she was rational. No objection appears in the abstract as having been made by defendant to the opinion expressed by the witness Welton.

Regarding the testimony of Dr. Alexander Davis, who was the testatrix' family physician and treated her through the period of her illness, defendant complains

that the doctor went into a rather lengthy medical discussion of his theories about her ailment and of his diagnosis of her condition, which was "too involved and too impossible to be understood by the average juror to give much time here." Dr. Davis testified that he first saw Mrs. Leonard in connection with her last illness on October 19, 1938. He testified that during his visits during October 1938, he formed an opinion as to her mental condition. It was during this time that testatrix told the witness that she was married and the witness says that she told this to him so many times, possibly every day during that period; that she said she was married to the most wonderful man in the world; that she was going to Europe with him. Continuing his testimony, he says; "Later on, I had other conversations with her about being married and I would say it was not until the latter part of December or in January that she named the man." She named Chauncey Bell. And then the witness relates a conversation with Chauncey Bell in which the witness asked defendant if he knew about Mrs. Leonard's statement that they were married, and he testified that Mr. Bell admitted knowing of Mrs. Leonard's statement that they were married but asserted that they were not "legally married." In defendant's brief the doctor is quoted as saying "My opinion is that she was not intelligent," and follows the quotation by saying that this statement of course, does not meet legal requirements even where a qualified expert is attempting to testify on mental incapacity. In this regard, plaintiffs point out that the record discloses that the word "intelligent" was not used by the witness but the word "competent" was used which has an entirely different meaning and in its context fully meets the legal requirements.

The next witness, Charles B. Quarles, who was a lawyer of Milwaukee, Wisconsin, and whose testimony was taken by deposition, was visited by testatrix during the month of September, where she was a house

guest. She suffered a stroke on October 5th and remained in his home until October 19th when she returned to Chicago in the care of a nurse. During the time testatrix was in the home he had occasion to converse with her and observe her. On the evening of October 26, 1938, the day that she executed the purported will in issue she telephoned Mr. Quarles and told him that she had made a will leaving him $50,000. He testified that in his opinion she was not on the 26th day of October, 1938 of sufficient mind and memory to be competent to carry on the ordinary transactions of life or to know the extent of her property and the natural objects of her bounty. The witness also testified that he knew that his two daughters had been left bequests of $500 each by the purported will and that they were not provided for in the former will; that he was familiar with the pleading in this case and that he had seen photostatic copies of the will; that under the former will his wife would receive a bequest of $800 whereas under the purported will the bequest was increased to $1,000; in short, the witness testified that in his opinion based upon his observation of the testatrix while she was in his home and his conversation with her on October 26th, the day of the making of the will, he was of the opinion that she was not competent.

The testimony of two other witnesses, Eugene Barnhardt and Christine Pease, was offered by plaintiffs. Mr. Barnhardt had known testatrix during her lifetime, had lived next door to her for 13 years and saw her at intervals after that for the next 20 years; saw her last in the fall of 1938. Mrs. Pease had known testatrix for over 50 years. They had been very good friends and she saw her last in early November of 1938. Mr. Barnhardt testified that when he last saw her in the fall of 1938 she was not at that time of sufficiently sound mind and memory to understand and carry on the ordinary affairs of business. Mrs. Pease testified that between the time she visited her in November 1938 and the time she saw her three months prior thereto there was a dif-

ference in her mental condition, and that it was her opinion when she visited her in November 1938 that she definitely could not take care of her ordinary affairs of living, that she did not talk coherently, and that in her opinion she was not responsible. No objection was interposed by defendant to the expression of these opinions by the witnesses.

As against the foregoing evidence of testatrix' mental incapacity, defendant produced Ellen Pembroke and Albert W. Potts, attesting witnesses to the will. The witness, Albert Potts, had merely taken the will prepared by Mr. Welton to the testatrix to obtain her signature, acted as a witness and said he had no special reason for making any examination to determine whether or not she was of sound mind and memory. Ellen Pembroke, the other attesting witness, was a neighbor of the testatrix, and testified that she visited her from time to time and stated that Mrs. Leonard was on October 26, 1938 of sound mind and memory. Defendant's witness, Louis Erwin, was a widower whose wife had been a close friend of the testatrix; but Mr. Erwin had not seen the testatrix or talked with her for four or five years and gave no opinion as to her competency at the time of the execution of the will. The witnesses, Al Nicolae and Vail Ferro, were business associates and friends of defendant Bell but had little opportunity to observe the testatrix. The weight to be given their testimony was a matter for the jury. Upon consideration of all the facts appearing in the record from the evidence produced by plaintiff and that produced by defendant, proponent of the will, we are of the opinion that the jury was justified in the finding of incompetency and that their verdict is supported by a preponderance of the evidence. Whatever may be said upon the evidence produced by the respective parties, it was a question solely for the jury, and the jury having passed upon the facts, their finding must be regarded as conclusive. (*Oliver v. Oliver*, 340 Ill. 445.)

There is a further question raised as to whether the court erred in instructing the jury. It is to be noted in this regard that the record, abstract and brief are all silent as to at whose instance any of the instructions, either given or refused, were tendered; that none of the instructions as to which objections are here raised for the first time are set forth by defendant in his brief and argument; and further, that the record, abstract and brief all indicate that defendant made no objection to the giving or refusal of any of the instructions. In order that this court consider whether an alleged improper instruction was given, it is necessary that it be shown at whose instance the instruction complained of was given. In *Sullivan v. William Ohlhaver Co.,* 291 Ill. 359, the Supreme Court held that where the abstract does not show at whose instance any of the instructions were given nor who requested the instructions which were marked "refused," the plaintiff in error was not in a position to complain of the refusal to give an instruction. In *Zorger v. Hillman's,* 287 Ill. App. 357, this court said;

"Counsel for plaintiff criticizes instructions given on behalf of defendant and the refusal of the trial court to give one requested by plaintiff. These instructions are not set out in the brief. It has been repeatedly held that instructions of which complaint is made should be set out in full in the brief, followed by definite and clear reasons supporting the alleged errors incident thereto." In the instant case the complained of instructions are referred to merely by number, nor is the context of any of them set forth in defendant's brief. In *Jones v. Keilbach,* 309 Ill. App. 233, the court said upon such a question: ". . . In the instant case none of the instructions as to which objections are raised by appellant are set forth in the brief and argument, but all of such instructions are simply referred to by number. This court will not, therefore, give detailed consideration to such objections in this opinion." Applying the rule of these

cases, this court will not consider the instructions where it is not shown at whose request they were given or refused and where the instructions are not set forth in the briefs, but merely referred to by number. Under the circumstances the defendant is estopped to complain as to alleged errors in the giving or refusal of instructions.

The will in this case was contested upon mental capacity and undue influence. Defendant made no motion to withdraw the issue of undue influence upon the ground that there was no evidence to sustain that charge. The finding of the jury was that the will was not the last will and testament of the testatrix. From the facts appearing in this record, we are of the opinion that such finding is supported by testimony that the testatrix was of unsound mind. In the case of *Holland v. People's Bank & Trust Co.*, 303 Ill. 381, a will was there contested on the grounds of mental incapacity and undue influence. The defendant made a motion to withdraw the issue of undue influence upon the ground that there was no evidence to sustain that charge. The court there held that where a will is contested on grounds of mental incapacity and undue influence, the denial of a motion to withdraw the issue of undue influence is not prejudicial error even if there is no evidence to sustain that charge, where a finding that the will was not the last will and testament of the testator is supported by testimony that he was not of sound mind. The court further held that where the testimony on either side in a will contest case is such as, when uncontroverted, will justify a finding either for or against the complainant, the Supreme Court will not disturb a verdict and decree setting aside the will.

Upon a careful consideration of all the questions involved, we are of the opinion that the court was wholly justified in entering the decree based upon the verdict of the jury.

*Decree affirmed.*

BURKE, P. J., and KILEY, J., concur.