Citizens National Bank of Decatur, Conservator of Estate of Vernon A. Hardin, an Incompetent Person, Plaintiff-Appellee, v. Claude T. Doran, Defendant-Appellant.

Gen. No. 9,955.

Opinion filed October 19, 1954.

Rehearing denied November 29, 1954.

MᶜMILLEN, GARMAN & OWEN, of Decatur, for appellant.

WHITLEY & WHITLEY, and MONROE & McGAUGHEY, all of Decatur, for appellee.

MR. JUSTICE HIBBS delivered the opinion of the court.

Vernon A. Hardin, in his own proper person, commenced this suit in the circuit court of Macon county, Illinois on July 19, 1950 to recover damages for per-

sonal injuries as the result of an automobile collision which occurred on January 15, 1950 at the intersection of U. S. Route No. 51, also known as North Main Street, a north and south street, and Division Street, an east and west street, in the City of Decatur, Illinois. The Citizens National Bank of Decatur, Illinois was, by order of the county court of Macon county, entered January 3, 1952, appointed conservator of the estate of Vernon A. Hardin, an incompetent, duly qualified as such, and thereafter was substituted as a party plaintiff, and the title of the action was changed accordingly. The cause was tried in April 1953 before a jury which returned a verdict for plaintiff in the sum of $35,000. Judgment for that sum was entered against the defendant. Motions for judgment notwithstanding the verdict, and in the alternative for a new trial, were made and each overruled. Defendant, Claude T. Doran, has appealed from such judgment to this court.

Error is assigned on the order of the trial court denying judgment notwithstanding the verdict; in overruling the motion for new trial on the ground that the verdict is contrary to the manifest weight of the evidence, that the court erred in refusing certain of defendant's instructions, that incompetent evidence was admitted over objection, and in refusing to permit the defendant to testify on his own behalf at the trial.

U. S. Route 51, also known as North Main Street, is a north and south paved street 46 feet wide between the curbs. Division Street, 25 feet wide from curb to curb, runs east and west and intersects North Main Street at right angles. The regular stop signs had been erected on Division Street. At the northeast corner of the intersection the curb was rounded to about the south line of the east and west crosswalk. There was a steel street light pole weighing 380 pounds embedded in concrete just north of this crosswalk, the base of which is contiguous to the east edge of the curb on Route 51.

On Sunday morning, January 15, 1950, at about 9:30 Vernon A. Hardin, hereinafter referred to as Vernon, was driving an automobile north on Route No. 51 approaching the intersection with Division Street. Wilbert Hardin, a brother of Vernon, and hereinafter referred to as Wilbert, was riding on the right side of the front seat. The evidence shows that the weather and the street were each in fair condition, and there was no other traffic on either of the two streets near the intersection.

The evidence shows without contradiction that Vernon was neither physically nor mentally capable of appearing in the case or testifying as a witness. Wilbert was the only eyewitness who testified. He stated that his brother was driving between 20 and 25 miles an hour on the east half of the street and at a point 50 to 60 feet south of the intersection saw the defendant's car approaching on Division Street at a distance of 140 to 150 feet from the intersection traveling 40 to 50 miles per hour. When the approaching car was passing the stop sign without stopping, he said to his brother, "Vernon, he is going to hit us." He just got through saying this when the collision occurred about midway of the eastern half of the intersection. It was stipulated the Hardin car went out of control into the light pole and as a result such pole was forced over so it leaned into the adjacent tree. The defendant's automobile struck the Hardin vehicle on the left side causing damage from above the front wheel to the rear wheel. Its right-hand side from the hood to the rear was badly demolished by the contact with the pole. The front of the right-front fender, the right headlight and right side of the front bumper of defendant's car were damaged. The latter came to rest on North Main Street facing southeast with both front wheels over the curb, the right-front wheel being on the east and west crosswalk. The damage to the two vehicles and the location

388

of defendant's automobile after the collision shows conclusively that defendant turned left into the intersection striking the left side of the northbound car.

These facts stand uncontradicted in the record. It is, however, contended by the defendant-appellant here that there is no evidence of due care on the part of plaintiff's ward. It is submitted that he failed to keep a lookout for cross traffic and should have, in view of his low rate of speed, applied his brakes in order to avoid a collision.

■ The issue here raised presents a question of law as to whether upon a full consideration of all the evidence and all reasonable inferences from it most favorable to the appellee there is a total failure or lack of evidence to prove due care on the part of appellee's ward. (*Heideman v. Kelsey*, 414 Ill. 453; *Todd v. S. S. Kresge Co.*, 384 Ill. 524.)

■ It is true that the existence of the stop sign on Division Street did not relieve the appellee's ward from the exercise of due care and caution, yet he had a right to assume that the appellant approaching on Division Street would not negligently fail to reduce his speed as he approached the intersection and would at least have his car under control so as to give preference to the right of way of the northbound car. (*Thomas v. Buchanan*, 357 Ill. 270, 277; *Roberts v. Cipfl*, 313 Ill. App. 373, 375; *Franks v. Childs*, 345 Ill. App. 83.)

Appellant has cited in support of its contention a number of cases including that of *Dee v. City of Peru*, 343 Ill. 36. There an automobile approached an open drawbridge on the public highway. Other cases cited are all suits involving the exercise of due care by travelers on the highway in approaching railroad tracks. None of these cases are applicable to the situation here involved.

■ Whether plaintiff's ward was in the exercise of due care was essentially a question of fact for the

jury to determine from all the evidence and surrounding circumstances.

■ The court did not err in overruling the motion for judgment notwithstanding the verdict.

Appellant urges that the manifest weight of the evidence shows appellee's ward to have been operating his automobile at a high and excessive rate of speed which contributed directly to his injury, and therefore, the motion for a new trial should have been granted. In support of this position it is said that the damage to the left-hand side of the car from striking the light pole was so extensive that the automobile must have been traveling at an excessive rate of speed, and the jury had no right to believe the testimony of Wilbert because the photographs in evidence show that from a point 40 or 50 feet south of the intersection he could not see appellant's car 140 to 150 feet to the west.

■ We have carefully examined the photographic exhibits which the appellant insists show the inability of Wilbert to see the approaching automobile in the manner in which he testified. Those exhibits show that when the witness was approximately 40 or 50 feet south of the intersection, he could have seen a car approaching from the west when it was approximately 140 or 150 feet west of the intersection. Wilbert was the sole eyewitness. The credibility of his testimony was for the jury to determine. It is not possible for this court to say that his description of the manner in which the accident happened and what he saw and observed is so incredible that his testimony is not worthy of belief. We cannot supplant the finding of the jury on this issue. Their determination that appellee's ward was in the exercise of due care and caution is not contrary to the manifest weight of the evidence.

Complaint is made that the court erred in refusing instructions numbered 16 and 25, both in abstract form,

tendered by the appellant. Such alleged error has not been preserved for review by this court. The report of the proceedings at the trial recites that just prior to the closing arguments the plaintiff and the defendant each tendered to the court fifteen instructions to be marked "Given" and read to the jury. The trial court thereupon announced that it was numbering plaintiff's instructions from 1 to 15, both inclusive, and those for defendant from 16 to 30, both inclusive. The court marked "Given" plaintiff's instructions numbered 1 to 9, both inclusive, and refused No. 10. It marked "Given" defendant's instructions 17 to 24, both inclusive, and No. 26 (the latter being abstracted in error as instruction No. 28) and refused instructions 16, 25 and 27. What became of defendant's instructions numbered 28, 29 and 30 and plaintiff's instructions 11 to 15, both inclusive, does not appear in the report of the proceedings at the trial, nor do such instructions appear therein. The certificates of the two official shorthand reporters merely recite that they reported all evidence offered, rejected or received in the course of the trial in shorthand notes and that the transcript "contains a full, true and correct transcription of all shorthand notes taken, of all evidence offered, received or rejected during the course of the trial . . . , on behalf of either the plaintiff or the defendant in said cause." The certificate of the presiding judge merely recites that the court having examined the transcript "and being satisfied with the correctness thereof and that the same is all of the evidence heard and considered by the Court doth settle and allow the same." There is no recitation in the transcript or the certificates that the instructions marked "Given" were all of the instructions given to the jury. There is no certificate by the presiding judge that the transcript contains all of the proceedings had before the court in the trial of the cause. In *Village of Wilmette v. Brachle,* 110 Ill. App.

356, it is said at p. 364: "There is a general answer which applies to each and every objection to any instruction, the giving or refusing of which is assigned for error, i.e., the record does not state that the instructions set forth therein as given are all the instructions that were given to the jury. In the absence of such a statement it is elementary that we must presume the action of the court concerning the giving and the refusing of instructions was correct." To the same effect is *Willey v. Dake,* 118 Ill. App. 47; *Hasterlik v. Strong,* 107 Ill. App. 347; *Bingham v. Christensen,* 348 Ill. App. 61; *People v. Gambony,* 402 Ill. 74, 82. In *Madison v. Wedron Silica Co.,* 352 Ill. 60 it is said at p. 62: "The errors assigned by the defendant with reference to the giving or refusing of instructions, either upon the part of the plaintiff or defendant, cannot be inquired into by this court, inasmuch as all of the instructions for the plaintiff and the defendant were not fully set out in the abstract. *City of Roodhouse v. Christian,* 158 Ill. 137; *People v. Ambolo,* 343 Ill. 480."

It is a fundamental principle many times announced that a bill of exceptions or report of the proceedings at the trial which does not show on its face that it contains all the evidence offered by both parties, is insufficient to present for review the insufficiency of the evidence to support the judgment. (*James v. Dexter,* 113 Ill. 654, 656.)

The instructions tendered and the rulings thereon are as much a part of the proceedings at the trial as the evidence offered, admitted or rejected. In the case at bar the report fails to show that the instructions marked "Given" were the only ones read to the jury. It affirmatively appears other instructions, not appearing therein, were tendered by both parties. The record is silent as to their disposition. In this condition of the record, under the above well established

principles, the rulings of the trial court in refusing defendant's instructions 16 and 25 are not preserved for review.

Appellant contends that he was unduly restricted in the cross-examination of Wilbert Hardin. On such examination it developed he was seriously injured in the accident and was in the Macon County Hospital for ten days, and shortly afterwards was for a like period in the Illinois Central Hospital. He was unable to work and was confined in a St. Louis hospital for 30 days, where a steel collar with traction was applied, and he did not commence work until February 1st, 1951. Prior to January 1st, 1951 he commenced suit against the appellant, and on January 16th of that year his pretrial deposition was taken. He was then asked, "You testified then . . . you were not able to work at that time?," to which question an objection was sustained. The jury retired and in its absence counsel for appellant brought out from the witness that when examined on January 16th he was wearing the steel collar, that shortly thereafter a settlement of his suit was effected, and the orthopedic specialist in St. Louis presented him with a traction to be used twice daily and advised him to try to work. The court thereupon indicated the testimony developed in the absence of the jury was incompetent. When the jury returned, appellant proved by the witness that in January 1951, after the taking of the deposition, his suit was settled.

█ The subject matter that the appellant undertook to inject into the trial, namely, the nature and extent of Wilbert's injury and when he was able to return to work was foreign to any issue in the cause and not admissible on the theory it affected his credibility as a witness.

Error is assigned on certain rulings of the trial court in connection with the direct examination of Dr. Downing. Vernon became his patient on January 9, 1951, a

year after the accident, six months after the suit was commenced, and before the conservator was appointed. The doctor, from January 9, 1951 to the date of the trial, was the attending physician as that term is commonly used. Appellant's objections related in the main to statements made by the patient to the doctor concerning his condition from the date of the collision down to January 9, 1951, and subjective symptoms exhibited on that date during the examination. In order to ascertain whether any of the rulings constituted error or prejudicial error, it is necessary to review the uncontradicted evidence, admitted without objection.

Vernon had been for a number of years a skilled carpenter, in good health both mentally and physically, able to carry on a conversation in the usual manner, and an active member in the affairs of the carpenters' union. On October 3, 1949, while working at his trade, he fell astraddle a motor, injuring the coccyx bone and was receiving medical aid for such injury at the time of the accident here involved. With the exception of a few days he had continued at his trade. There was no evidence that this injury had anything to do with his illness, both mentally and physically, the subject matter of this suit. In the automobile collision Vernon received an abrasion of the right forehead and fractures of the eleventh and twelfth ribs on the right side, and was confined in the hospital for eleven days. According to the hospital record, he complained of pain in the head, had periods of not breathing, often associated with interference with the respiratory centers of the brain, and dizziness. Dr. Smith, his then attending physician, gave it as his opinion that according to his objective findings the patient when discharged from the hospital had recovered from the accident, but had not recovered according to the subjective symptoms. Later, on several occasions in February 1950, Vernon

called at the doctor's office, complaining of dizzy spells and received treatments for such complaints. Upon returning home he acted as if he were in a dizzy condition and was hesitant in his speech. Later he went to work at his trade and continued to some extent until November of that year, when he quit work. In his work he was slow and became tired. His boss was afraid to put him off the ground for any work and the other workmen helped him. He was not capable of fulfilling his duties as a carpenter.

After quitting work in November 1950 his mental and physical condition continued to disintegrate. He lost the sense of balance, appeared to stare, had to be shaved lying down in bed, became more hesitant in his speech, was addicted to crying spells, could not carry on a conversation without becoming hysterical, had convulsions similar to epileptic seizures, was unable to carry on a conversation about business or this accident, was not able to appear at the trial and has not been outside his home since May 1952.

Two electro-encephalograms taken of the patient's brain in April and May 1952 indicated brain damage of a diffused nature. The Kahn test was negative.

The defendant offered no medical proof as to the mental and physical condition of plaintiff's ward or the cause thereof.

Dr. Downing's evidence stands uncontradicted in the record. He testified the patient was suffering from a post-concussion syndrome, a well recognized disease following an injury to the head which need not be especially severe. It is characterized by personality disintegration in which the patient suffers bizarre sort of spells not quite like epileptic spells and not responding to the modes of medication that ordinarily control epileptic seizures, facial asymmetry and abnormal eye findings. The doctor attributed the injury to the brain

to the blow he received on the forehead at the time of the automobile accident and to nothing else, and that his condition was not caused by anything that occurred prior to such accident. He further testified that the condition of the patient was permanent and that future treatment should consist of anti-convulsion medication and an additional period of observation in a neuro-psychiatric center. This evidence as to the diagnosis, cause of the injury, permanency of the condition and future treatment was admitted without any objection or motion to strike the testimony on the part of the appellant.

██ Even though Dr. Downing was not employed until about six months after this suit was commenced, he did treat and was the attending physician from February 1951 to the time of trial in April 1953 and we regard him as an attending physician within the rule concerning the admission in evidence of subjective symptoms related to a doctor in the course of the performance of his services, notwithstanding some of the subjective symptoms referred to the condition of the patient between the time of the injury down until the doctor first began to treat him.

██ In *Greinke v. Chicago City Ry. Co.,* 234 Ill. 564 it is said at p. 572: "The declarations of an injured party as to his physical condition, brought about as a result of injury, are self-serving and, at best, hearsay evidence. Statements, however, made by an injured party which form a part of the *res gestae,* or those made to his physician during treatment, constitute an exception to the general rule, and are admitted by reason of the fact that he will not be presumed to prevaricate at the very instant of his injury or while he is stating his physical condition to a physician from whom he expects and hopes to receive medical aid . . . ." In *Chicago City Ry. Co. v. Bundy,* 210 Ill. 39 the court in holding competent statements of subjec-

tive symptoms made to an attending physician say at p. 45: "It is earnestly insisted that it was error in the trial court to permit witnesses testifying to the nature of appellee's injuries to state what she said to them in describing her bodily condition. These statements were made to physicians during actual treatment and in immediate connection therewith, though some of them were made after the commencement of the suit. We have held that a physician, when asked to give his opinion as to the cause of a patient's condition at a particular time, must necessarily, in forming his opinion, be to some extent guided by what the sick person may have told him in detailing his or her pains and sufferings; but such declarations, being in favor of the party making them, are only competent when made a part of the *res gestae,* or to a physician during treatment or upon an examination prior thereto, and without reference to the bringing of an action to recover damages for the injury complained of, unless the examination should be made at the instance of the defendant, with a view to the trial. The evidence objected to comes clearly within the rule. *Illinois Central Railroad Co. v. Sutton,* 42 Ill. 438; *West Chicago Street Railroad Co. v. Carr,* 170 Ill. 478."

The evidence objected to in this case was admissible under this rule.

The appellant is not in any position to complain of the admissibility of such evidence. It produced no medical testimony as to the cause of the conceded mental and physical disability of the appellee's ward. His present condition and the cause thereof stands undisputed in the record by evidence to which no objection was made. Any error that may have been committed by the court in admitting the subjective symptoms objected to was harmless error. In *West Chicago St. R. Co. v. Carr,* 170 Ill. 478, a physician examined the plaintiff shortly before trial but not with a view to

testifying and after describing her condition he stated, "She tells me she suffers pain." A motion was made to strike out the answer. The court held that the answer should have been stricken but say at p. 485: "Her physician testified that she suffered an internal injury, which, if it existed, anyone could readily see must have produced more or less pain and suffering. In this view of the uncontradicted testimony we cannot bring ourselves to the belief that the improper answer of the witness above mentioned was of such a prejudicial character as that a different result would have followed had it been excluded." To the same effect is *Greinke v. Chicago City Ry. Co.*, 234 Ill. 564 at p. 573.

Complaint is also made that Dr. Downing's diagnosis was not based solely upon his own findings but upon the conclusions arrived at by other physicians who examined appellee's ward but not called as witnesses and upon some of the subjective symptoms to which objection was made. Inasmuch as no objection was made to the doctor's testimony on this subject and no motion was made to strike out the answers, the question is not preserved for review. (*Schachtrup v. Hensel*, 295 Ill. App. 303 at 311; *Wilson v. Bell*, 315 Ill. App. 418, 427.) We further believe the testimony was admissible because the doctor testified that his diagnosis was based upon his own findings and that he merely sent his patient to three other doctors for confirmation of his findings.

Lastly, it is contended that the court erred in holding the defendant an incompetent witness. It is claimed that the wife of appellee's ward who testified on the trial, his brother, and Dr. Downing had a direct interest in the outcome of the suit within the third exception of section 2 of the Evidence Act, and therefore, defendant was a competent witness.

The interest which disqualifies a witness under sec. 2, ch. 51, Ill. Rev. Stats. 1953 [Jones Ill. Stats.

Ann. 107.068] must be a legal interest which is direct, certain and immediate so that the party will gain or lose as a result of the suit. (*Flynn v. Flynn,* 283 Ill. 206 at p. 217; *Stephens v. Hoffman,* 263 Ill. 197 at p. 202.)

The fact that the plaintiff might lose the litigation and thereby lessen the opportunity of Dr. Downing to receive his fees, and Elsie Hardin, wife of appellee's ward would suffer in her support did not give either of them such an interest in the litigation as to render the appellant a competent witness. (*Britt v. Darnell,* 315 Ill. 385 at p. 392.) It cannot be seriously contended that Wilbert Hardin had any direct, legal and immediate financial interest in the outcome of the case.

The trial court did not err in overruling the motion for a new trial and the judgment of the circuit court of Macon county is affirmed.

*Judgment affirmed.*