Dennis Hale and Billie J. Hale, Plaintiffs-Appellants, v. Wilma M. Cravens, Defendant-Appellee.
Sharon L. Finkboner, Plaintiff-Appellant, v. Wilma M. Cravens, Defendant-Appellee.

Gen. No. 11,125.

Fourth District.

October 26, 1970.

Hatch, Corazza, Baker and Jensen, and Hagin Harper, of Champaign (Harold A. Baker, of counsel), for appellants.

Gillespie, Burke & Gillespie, of Springfield (Robert E. Gillespie, of counsel), for appellee.

JONES, J.

This is an appeal by plaintiffs from an order of the circuit court denying their post-trial motions for judgment notwithstanding the verdict and for new trial and rendering judgments for defendant on the verdicts of the jury. The two cases involved were consolidated for trial and this appeal.

The cases arose out of an automobile collision on January 30, 1967, at the intersection of U. S. Route 54 and Buffalo Hart Road in Sangamon County. The plaintiffs were riding in a 1962 Chevrolet Impala convertible owned by plaintiff Sharon Finkboner. Plaintiffs were en route from Mahomet, Illinois, to Mount Clair, California, where plaintiffs Dennis Hale and Sharon Finkboner were to be married. Dennis Hale was driving, Sharon Finkboner was in the center of the front seat and plaintiff Billie Hale was on the right side of the front seat. A nonparty witness, Ronnie Shoemaker, was in the back seat. It was stipulated that Dennis Hale and Sharon Finkboner were engaged in a joint venture and any fault on the part of Dennis Hale would be imputed to Sharon Finkboner. The jury rendered verdicts in favor of the defendant and against the plaintiffs. Plaintiffs' motions for judgment notwithstanding the verdict and for new trial were de-

nied and judgments rendered for defendant on the verdicts. Plaintiffs appeal, contending the trial court was in error in refusing to grant their motions for a judgment notwithstanding the verdict and ordering a new trial as to damages only. Our review of the facts and applicable law have led us to agree with plaintiffs' contention.

U. S. Route 54 is a two-lane, concrete highway, twenty-four feet wide, which runs in a general northeast-southwest direction at the place of the accident. The Buffalo Hart Road is a blacktop road which intersects U. S. 54, and there is a stop sign for northbound traffic on Buffalo Hart Road. U. S. 54 is the preferential highway with no stop signs and the speed limit through the intersection is 65 miles per hour. There is a crossroad sign for westbound traffic on the north side of U. S. Route 54 at a point approximately 1,000 feet northeast of Buffalo Hart Road. A little less than one-half mile to the east of Buffalo Hart Road there is a curve in U. S. 54. From the curve U. S. 54 is slightly downgrade and as it gets to the Buffalo Hart Road it starts on a slight upgrade. From the intersection there is an unobstructed view to the east of approximately one-half mile. There were two automobiles parked on the south side of the right-of-way of U. S. 54 approximately thirty-six feet east of Buffalo Hart Road and four to seven feet south of the south edge of the paved portion of U. S. Route 54. The windows of these two automobiles were obscured. The two parked automobiles were an obstruction to the view to the east of a motorist entering Route 54.

The accident occurred at approximately 3:55 p. m. It was daylight, but the weather was cloudy. There were snowbanks along the sides of the road created when snowplows had cleared a previous snowfall. The paved portion of the highway was free from snow and ice, but was wet. The plaintiffs were talking and the radio in

their automobile was on. The defendant testified that as she approached the intersection of Route 54 and Buffalo Hart Road, she pulled up to the stop sign and observed the highway in both directions. She saw a car approaching from the west signalling a right-hand turn and saw no traffic approaching from the east. The car from the west was two city blocks away when she first saw it and she continued to observe it until it made its right-hand turn on the Buffalo Hart Road. After it had turned, she looked again to the east, saw nothing there and proceeded to cross the intersection when the collision occurred. Plaintiff Dennis Hale testified that he never saw defendant's automobile until he was between forty-eight and one hundred feet from the intersection when defendant drove her automobile onto Route 54 and into the path of plaintiffs' automobile. He first saw defendant's automobile when its front wheels were on the edge of the eastbound lane. He tried to apply the brakes and turn to the left, but didn't have time. Witness Ronnie Shoemaker testified that he first saw defendant's automobile when it was in the middle of the eastbound lane and they were three to four-car lengths away and that Dennis didn't have time to do anything, he started to swerve to the left, but that's all he could do. The evidence as to the speed of plaintiffs' car is disputed. Plaintiff Dennis Hale testified that he had been driving at 65 miles per hour before getting to Buffalo Hart, but had slowed to approximately 60 miles per hour as he approached the intersection. Witness Shoemaker, called by plaintiffs, testified that they had driven at 65 miles per hour before Buffalo Hart and slowed as they arrived at Buffalo Hart. Witness Moore, called by defendant, testified over objection that in his opinion, plaintiffs' car was exceeding the speed limit. Witness Mohn, called by defendant, testified that plaintiffs were "running bet-

470

ter than 65 miles an hour." The latter two witnesses based their opinions on the top of the convertible being "bowed out" and the noise of the engine. The front of the plaintiffs' car struck the right middle of defendant's car at a point in the center of the intersection. There were no skid marks or debris on the pavement. Plaintiffs' vehicle came to rest twenty-five feet west of the intersection, on the north side of the pavement facing the northeast. Defendant's vehicle came to rest thirty feet west of the intersection, north of the pavement, facing in a westerly direction. It is undisputed that each of the plaintiffs received severe and permanent physical injuries. The defendant's five-year-old son who was riding with her, was killed in the accident.

██ Chapter 95½, section 167a(b) and (c), and section 183(c), Ill Rev Stats 1967, imposed upon the defendant a duty to stop at the point nearest the intersecting roadway where she had a view of approaching traffic on the intersecting highway before entering the intersection and to yield the right-of-way to other vehicles which were approaching so closely on said highway as to constitute an immediate hazard. By driving her automobile upon and across U. S. 54 and into the path of plaintiffs' automobile, she violated this duty by either looking and failing to see what was in plain view (Tucker v. New York, C. & St. L. R., 12 Ill2d 532, 147 NE2d 376, Payne v. Kingsley, 59 Ill App2d 245, 207 NE2d 177), or by failing to account for the obvious possibility that the two automobiles parked on the south side of the highway could obstruct her view of other automobiles moving in a westerly direction along U. S. 54. She failed to continue her lookout as she approached and entered upon the twelve foot wide eastbound lane of U. S. 54 until such time as she had a clear view of approaching traffic unobstructed by the parked automobiles. Whichever of

471

these causative factors pertained, it is clear that defendant did not exercise that degree of care required of her and under the facts, her conduct was negligent.

The only bar to plaintiffs' recovery would be their own contributory negligence. The only factors in this case which could support a contention that plaintiffs were contributorily negligent are those of excessive speed and lack of proper lookout. There is no evidence that plaintiffs were not keeping a proper lookout. They were on the preferential highway and saw nothing of the defendant until she started across the highway and the front wheels of her automobile were on the edge of the eastbound lane. There is nothing in the evidence to show that plaintiffs saw defendant approach the highway on the Buffalo Hart Road, nor is there anything to suggest that plaintiffs should have been alerted to the presence of defendant's vehicle or the fact that defendant might be expected to proceed onto the highway and into the path of plaintiffs' vehicle. A traveler on a preferential highway has a right to expect a car approaching along a secondary road controlled by a stop sign to obey the stop sign and yield the right-of-way as required by law. Rowe v. Frazer, 83 Ill App2d 367, 227 NE2d 781; Pomrenke v. Betzelberger, 41 Ill App2d 307, 190 NE2d 522. As was stated in the case of Hession v. Liberty Asphalt Products, Inc., 93 Ill App2d 65, 235 NE 2d 17:

> "Stop signs are erected for the obvious purpose of requiring motorists to yield to vehicles on through highways. If the motorist on the through highway had to travel at such a speed that he could stop his car in time to avoid collisions with vehicles which ignore stop signs on intersecting roads, the purpose of having a through highway in the first place would be entirely thwarted. The driver who has the stop

sign cannot assume the car on the through highway will stop. It is the other way around."

Four witnesses testified to the speed of plaintiffs' automobile. Plaintiff Dennis Hale testified that his speed was 60 miles per hour. Witness Ronnie Shoemaker, called by plaintiffs, testified that plaintiffs' speed was approximately 65 miles per hour before entering Buffalo Hart, but that they had slowed down as they came into Buffalo Hart. Witness Moore, called by defendant, testified that plaintiffs' car "was exceeding the speed limit," and witness Mohn, called by defendant, testified that plaintiffs were "running better than 65 miles an hour." Both Moore and Mohn based their opinions as to speed upon the top of the convertible being "bowed out" and the noise of the engine. Defendant contends that this testimony creates a question for the jury and that the jury's verdict against the plaintiffs should not be disturbed, for it is not against the manifest weight of evidence. It is plaintiffs' contention, with which we are in agreement, that though the evidence in its aspect most favorable to defendant might show plaintiffs were exceeding the speed limit of 65 miles per hour, that excessive speed was not a proximate cause of the occurrence. Whether the speed of plaintiffs' automobile was 60 miles per hour or 70 miles per hour, the sole cause of the collision was the fact that defendant drove her automobile directly into the path of plaintiffs' vehicle under circumstances that afforded plaintiffs no opportunity to avoid the collision. As stated in Lerette v. Director General of Railroads, 306 Ill 348, 137 NE 811 (1923):

> "The mere fact that plaintiff was violating the law at the time he was injured will not bar his right to recover unless the unlawful act in some way proximately contributed to the accident in which he was injured. (Star Brewery Co. v. Hauck, 222 Ill 348;

473

Graham v. Hagmann, 270 id. 252; Ensley Mercantile Co. v. Otwell, 142 Ala 575, 4 Ann Cas 512; Munroe v. Hartford Street Railway Co., 76 Conn 201, 56 A 498.) In determining whether the unlawful conduct of plaintiff will bar his right to recover, there must be kept in mind the distinction between that which directly and proximately produces or helps to produce the result as an efficient cause and that which is a necessary condition or attendant circumstance of it. If the illegal act is a mere condition which made it possible for the accident to occur but is in itself no part of the accident it will not bar recovery. It is, of course, an essential condition of most accidents that the injured party be where he was at the time he was in order for the injury to occur, and the fact that he would not have been there if he had not been violating the law is not, in itself, a defense."

The principle set out in the Lerette case is reiterated in Jeneary v. Chicago & Interurban Traction Co., 306 Ill 392, 395, 138 NE 203 (1923):

"Violation of a law at the time of an accident by one connected with it is usually evidence of negligence, but there remains a question of fact whether the illegal act is the proximate cause of the injury. The mere fact, if it be a fact, that defendant in error was violating the law at the time he was injured will not bar his right to recover unless the unlawful act in some way proximately contributed to the accident in which he was injured. If the illegal act is a mere condition which made it possible for the accident to occur but is not itself a part of the accident it will not bar recovery."

Also see Bonnier v. Chicago, B. & Q. R. Co., 2 Ill2d 606, 613, 119 NE2d 254 (1954); and Streeter v. Humrichouse, 357 Ill 234, 191 NE 684.

■ We are mindful of the weight that is to be accorded jury verdicts. However, in this case the verdicts of the jury are not justified by the evidence. Whether they were swayed by sympathy for defendant because her minor son was killed in the collision, which plaintiffs claim resulted from the defendant's improper emphasis at the trial, or by other factors, is immaterial. We think that the evidence in this case,when viewed in its aspects most favorable to the defendant, so overwhelmingly favor the plaintiffs that no verdict against the plaintiffs based on that evidence could ever stand, and the court should have granted plaintiffs' motions for judgment notwithstanding the verdict. Pedrick v. Peoria & E. R. Co., 37 Ill2d 494, 229 NE2d 504.

Defendant places emphasis upon a large number of cases arising out of collisions at intersections where one of the parties claimed a preferential way. Typical of these citations is Conner v. McGrew, 32 Ill App2d 214, 177 NE2d 417, where the court stated:

> "The rule prescribing the standard of care required of a driver who is proceeding along a preferential highway has been set forth many times. The authorities agree that a driver on a preferential highway does not have an absolute or unqualified right-of-way that can be asserted regardless of circumstances, distances or speed. Such a driver may not plunge blindly ahead in reliance upon an assumption that the other motorist will obey the law and yield the right-of-way, nor may he heedlessly proceed into obvious danger. Rather, there is a duty upon such driver to observe due care in approaching and crossing the intersection and to drive as a prudent person would to avoid a collision when the danger is discovered or, by the exercise of reasonable care, should have been discovered. Pennington v. McLean, 16 Ill2d 577, 158 NE2d 624; Anderson v.

475

Middleton, 350 Ill App 59, 111 NE2d 904; Citizens National Bank of Decatur v. Doran, 3 Ill App2d 383, 122 NE2d 450; Dodds v. Chicago Transit Authority, 9 Ill App2d 388, 132 NE2d 816; Smith v. Ohio Oil Company, 10 Ill App2d 67, 134 NE2d 526; Quigley v. Crawford, 19 Ill App2d 454, 153 NE2d 867, 164 ALR 8.

"The Illinois decisions, in applying this rule, have consistently held that it is the function of the jury to determine whether the judgment of the driver on the preferential highway conformed to the standards of the reasonable and prudent man. Citizens National Bank of Decatur v. Doran, supra, and Quigley v. Crawford, supra."

We have examined these cases and find they are distinguishable on the facts. They are, for the most part, situations in which the driver on the preferential highway saw or should have seen the other driver and had some opportunity to stop or otherwise avoid a collision. In this case there were no circumstances of distance or speed which plaintiff driver failed to properly consider, nor was any danger ever discovered until the collision was imminent and unavoidable. In any event, all the cases cited by defendant on the proposition were decided prior to the Pedrick case (supra), when the rule was that if there was "any evidence" of negligence upon the part of the driver on the preferential way, the issues were to be decided by the jury. The Pedrick case expressly disapproved such rule in favor of the one we apply here.

For these reasons this cause will be remanded to the trial court with directions to enter an order granting plaintiffs' motions for judgment notwithstanding the verdicts of the jury and to conduct a new trial upon the issue of plaintiffs' damages only.

It is necessary further that we discuss an issue that will arise upon the retrial on the issue of damages only. In this case the defendant offered and the court gave a seat belt instruction. The instruction quoted the provisions of chapter 95½, section 217.1(b) and (c), Ill Rev Stats 1965. The instruction further provided that the jury could consider whether or not a party violated the statute to be a circumstance with reference to the issue of mitigating any injuries and on the issue of whether or not such party exercised due care. It was error to give this instruction. The cited statute prohibits the operation of a 1961 or later model motor vehicle of the first division, unless the front seat of such motor vehicle is equipped with two sets of seat safety belts.

■ ■ On the then evidentiary situation, such an instruction was not germane to any issue in the case. We discussed this issue in Schomer v. Madigan, 120 Ill App2d 107, 255 NE2d 620 (4th Dist 1970). In this case, as in Schomer, there was no evidentiary basis for the given instruction. In Schomer, we discussed the case of Mount v. McClellan relied upon by the defendant to support the instruction. We adhere to the view expressed in Schomer that neither the existence nor use of seat belts has any relation to the issue of liability, and that an instruction as to the existence or nonexistence, use or nonuse of a seat belt would be proper with reference to damages only when the record establishes by competent evidence that the damages may have been mitigated if a seat belt had been in existence and used. It is also to be noted that the seat belt statute imposes a duty upon the automobile operator alone; it has no concern with passengers. Accordingly, any instruction based upon a violation of the duty created by the statute must be limited to the operator. The Mount case holds that, "There is a duty, based on the common law standard of ordinary care, to use available seat belts independent of any

statutory mandate." Mount v. McClellan, 91 Ill App2d 1, 234 NE 329. Since the vehicle in which plaintiffs were riding was not equipped with seat belts, it would be improper to give a seat belt instruction which would pertain to passengers.

For the reasons stated, the judgment of the Circuit Court of Sangamon County is reversed and this case is remanded for a new trial upon the issue of plaintiffs' damages.

Reversed and remanded for a new trial as to damages only.

CRAVEN, P. J. and TRAPP, J., concur.