SPRUCE EQUIPMENT CO., Appellant,

v.

John M. MALONEY, Appellee.

John M. MALONEY, Cross-Appellant,

v.

SPRUCE EQUIPMENT CO.,
Cross-Appellee.

Nos. 2037, 2044.

Supreme Court of Alaska.

Nov. 8, 1974.

14. Appellee's brief at 20.

15. Nothing herein precludes such further hearings and the taking of evidence as the court decides are necessary.

Charles E. Cole, Richard D. Savell, Fairbanks, for appellant and cross appellee.

Lloyd I. Hoppner, James R. Blair, Rice, Hoppner, Blair & Associates, Fairbanks, for appellee and cross-appellant.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

BOOCHEVER, Justice.

Spruce Equipment Co. (hereinafter "Spruce") appeals from a judgment entered on a jury verdict awarding the appellee, John Maloney, $150,000 for injuries sustained in an accident on the North Slope.

The facts are not in serious dispute. While driving a truck on the North Slope

on the evening of April 19, 1969, John Maloney struck a pile of gravel which had been placed on the roadway by Spruce. The gravel had been placed on the right side of the road for use in raising the elevation of the roadway. Maloney testified that immediately prior to the collision, he remembered the headlights of an approaching truck, and he stated that the truck had drawn aside his own at the precise moment he noticed the gravel pile, so that he could not turn to the left to avoid running into it.

Maloney was hauling sacks of drilling mud on pallets on the evening of the accident. Upon impact, the load crashed into the cab of the truck and pinned Maloney inside. Maloney sustained extensive injuries.

Spruce raises two questions on appeal: (1) whether it was error to refuse to instruct the jury that, if plaintiff violated provisions of the Construction Safety Code of the State of Alaska, a prima facie case of contributory negligence had been established; and (2) whether it was error to instruct the jury that plaintiff's damages from the date of the injury to the time of trial would include the reasonable value of the time lost, if any, wherein he was unable to pursue his occupation.

### I

On the date of the accident, Section 309–82 of the Department of Labor's Construction Safety Code provided that:

> The load on every vehicle shall be properly distributed, chocked, tied down or otherwise secured in order to prevent shifting.

Spruce requested the trial judge to instruct the jury that the failure to adhere to the Code constituted prima facie evidence of contributory negligence and assigns the failure to give such an instruction as error.

Maloney testified that on the night of the accident, there were chains in the cab which had previously been used to secure steel and folding buildings to the flatbed of the truck. Although the heavy load was placed on the trailer directly behind the cab, and although there was no restraint of any kind to protect the driver from a shifting load, Maloney did not use the chains to secure the sacks of mud.[1] Maloney testified, however, that it was not the general practice to tie down the type of load he was carrying, and his testimony was concurred in by other witnesses although there is conflicting testimony on this point.

The trial judge gave general instructions to the effect that if Maloney were contributorily negligent and such negligence was one of the proximate causes of his injury, he would not be entitled to recover. In addition, he specifically instructed the jury that violation of two other sections of the Construction Safety Code of the State of Alaska dealing with brakes and operation at a safe speed for roadway conditions would establish a prima facie case of negligence, if a proximate cause of the collision.[2] But the court refused to give an instruction pertaining to the alleged violation of Section 309–82 which required the proper securing of the load, stating that while the issue might be important in determining damages, the accident would have occurred regardless of any such alleged negligence.

■ The trial court correctly distinguished between alleged negligence of Maloney, which may have been a substantial cause of the accident and thus a bar to recovery, and his alleged antecedent negligence which may have contributed to the severity of his injuries but not to the collision. It is unquestioned that the alleged violation of Section 309–82 did not proximately contribute to the collision itself. Therefore, with relation to the collision it-

---

1. It was further noted that there were no traffic controls (stop and yield signs) in the area, and the road was rough.

2. An additional instruction was given as to possible excuse or justification for the violation in accordance with Ferrell v. Baxter, 484 P.2d 250 (Alaska 1971).

self, the trial court properly refused to give any instruction regarding Section 309–82. Nevertheless, it might be contended that the failure to secure the load contributed to Maloney's injuries. If such a contention were substantiated at trial, then some reference in the jury instructions to Section 309–82 and the import to be given its violation would be appropriate. The Restatement of Torts treats this problem as follows:

. . . Where the harm is single and indivisible, it is not apportioned between the plaintiff and the defendant, in the absence of a statute providing for such division of the damages upon an arbitrary basis. Where, however, there are distinct harms, or a reasonable basis is found for the division of a single harm, the damages may be apportioned, and the plaintiff may be barred only from recovery for so much of the harm as is attributed to his own negligence. Such apportionment is commonly made, under the damages rule as to avoidable consequences, where the plaintiff suffers an original injury, and his negligence consists in failure to exercise reasonable care to prevent further harm to himself.

. . .

Such apportionment may also be made where the antecedent negligence of the plaintiff is found not to contribute in any way to the original accident or injury, but to be a substantial contributing factor in increasing the harm which en-

sues. There must of course be satisfactory evidence to support such a finding, and the court may properly refuse to permit the apportionment on the basis of mere speculation.[3]

Dean Prosser also adopts this position as the better view stating:

A more difficult problem is presented when the plaintiff's prior conduct is found to have played no part in bringing about an impact or accident, but to have aggravated the ensuing damages. . . . [Some courts] have apportioned the damages, holding that the plaintiff's recovery will be reduced to the extent that they have been aggravated by his own antecedent negligence. This would seem to be the better view, unless we are to place an entirely artificial emphasis upon the moment of impact and the pure mechanics of causation.[4]

Similarly, apportionment of damages has been employed in some cases involving the use of seat belts by passengers in automobiles.[5]

Thus the question of whether Spruce was entitled to an instruction pertaining to Section 309–82 on the issue of damages still remains.[6] The preliminary issue to be considered is whether the failure to secure the load could have altered the harm sustained by Maloney, as otherwise the instruction would be irrelevant. We have carefully reviewed the testimony and have been unable to find evidence indicating

3. Restatement (Second) of Torts § 465, comment c at 510–11 (1966). *See also* Anchorage Independent School Dist. v. Stephens, 370 P.2d 531, 533 (Alaska 1962).

4. Prosser, Torts § 65 at 423–24 (4th ed. 1971).

5. Uresky v. Fedora, 27 Conn.Sup. 498, 245 A.2d 393 (1968); Hale v. Cravens, 263 N.E.2d 593, 129 Ill.App.2d 466 (1970); Mount v. McClellan, 234 N.E.2d 329, 91 Ill. App.2d 1 (1968); Barry v. Coca Cola Co., 99 N.J.Super. 270, 239 A.2d 273 (1967); Sonnier v. Ramsey, 424 S.W.2d 684, reh. denied (Tex.Civ.App.1968). *See generally* Bowman, Proving the Seat Belt Defense, 37 Ins.Couns.J. 385, 390 (1970); Walker & Beck, Seat Belts and the Second Accident,

34 Ins.Couns.J. 352 (1967); Note, Seat Belt Negligence in Automobile Accidents, 1967 Wis.L.Rev. 288, 297–98.

6. Counsel requested an instruction pertaining to the alleged violation of the regulations as constituting contributory negligence per se, citing Ferrell v. Baxter, 484 P.2d 250 (Alaska 1971). Upon the court's refusal to give such an instruction, discussion ensued as to whether an instruction pertaining to the regulation should have been given with reference to the issue of damages. The judge decided not to give such an instruction. Our resolution of the issue as to whether the instruction should have been given does not require us to rule on the adequacy of the request for the instruction.

that "proper" securing of the load could have altered the harm sustained by Maloney.

■ A Spruce employee testified that chaining the mud down would not have prevented it from crashing forward into the cab.[7] A partner for J & J Construction Co., a supplier of trucks for use on the North Slope, testified that it would have done no good to chain the load down prior to the accident, either because the chain would have been jarred loose by the vibrations over the rough roadway, or because the pallet of bags would have crashed into the cab, or because the chain would have broken. George Haskins, an engineer who had had considerable experience driving a truck himself, explained that it would have taken very little pressure to break the standard ⅜ inch chain that is normally used to tie down loads, even if the drilling mud had been secured.

He also explained that it would have required an abnormally extensive web of chains, not employed in the industry, to fasten the load securely to the trailer. Since upon impact the trailer had been thrust forward with enough force to break the pin attaching the cab to the trailer, he added that the trailer (with cargo attached) would have crumpled the cab anyway. Haskins estimated that the force on impact had been 1,700,000 foot-pounds, while the breaking point of the pin was 600,000 foot-pounds. Additional testimony substantiated Haskins', and there was no evidence that chaining the load would have prevented it from crushing the cab.[8] The injuries, in short, would have been suffered whether or not the load was chained.[9] The trial court properly refused to give an instruction pertaining to plaintiff's alleged negligence in failing to tie down the load.[10]

7. See text accompanying note 1, supra.

8. Michael Dryer, a driver on the Slope at the time of the accident, concurred with Haskins' opinion that the chains would have been broken, and stated emphatically that at any rate the individual bags would have broken free. Roy Tribble, another driver, testified that if each pallet had been chained down, the forward momentum of the load at the moment of impact would probably have ripped the nails right out of the pallets, leaving the sacks free to crash into the cab. Other testimony tended to corroborate the aforementioned opinion evidence.

9. With respect to an apportionment of damages, an additional problem would arise were the requested instruction to be given. There must be an adequate evidentiary basis established for the jury to apportion any damages between injuries sustained due to the collision itself and injuries attributable to Maloney's alleged antecedent negligence. The only testimony on this issue was elicited from Dr. Lindig, who stated:

A . . . The mechanism of injury in this type of case is a rather complex thing. It's over in a split second and I suppose that studies have been done in regards [sic] to vehicular accidents that are simulated where a speeding vehicle is decelerated say from 60 miles an hour to zero in just a fraction of a second. And these things have been studied at length. But it's difficult to separate precisely the components of a complex accident like this. I'm not evading

your question. It's quite apparent that the fractures of the lower dorsal and the lumbar spine were produced by what we call a hyperflexion injury. In other words, his spine had to be bent forward in order to produce that fracture. . . .
Q All I'm saying, Doctor, is couldn't his spine have been bent forward from being pushed from behind as opposed. . . .
A Yes, that's possible.

This testimony underscores the inability to arrive at any fine apportionment of damages. There is thus no adequate evidentiary basis for any apportionment consideration by the jury.

In a non-comparative negligence jurisdiction such as Alaska, an analogy, though imperfect, can be made between the apportionment of damages attributable to the antecedent negligence of the plaintiff as opposed to the negligence of the defendant and an application of the principle of mitigation of damages. As an application of that principle, it would appear to be part of the defendant's burden of proof in showing failure to mitigate to adduce an evidentiary basis sufficient to present an apportionment question to the jury. See Walker & Beck, Seat Belts and the Second Accident, 34 Ins.Couns.J. at 355.

10. The avoidable consequences rule requiring the plaintiff to prevent or minimize damages, " . . . does not apply unless one injured by the wrongful or negligent acts of another may protect himself with reasonable effort. . . . " Danzas, Ltd. v. National Bank

## II

Spruce also contends that the trial court erred in instructing the jury as to the proper measure of damages.

The evidence adduced at trial demonstrated that, prior to the accident, Maloney had been employed in various capacities as a driver in the construction trade. He did not work or seek employment of any sort between the date of the accident, April 19, 1969, and the date of trial which concluded on April 26, 1973. In July of 1970, Maloney enrolled in a vocational school in Oregon, which he attended until May 1971. He attended the business school again the next year and withdrew in May 1972.

During the summer, he drove unaccompanied from Eugene, Oregon to Prince Rupert, British Columbia. After cleaning and repairing his trailer, he sold it. He also periodically supervised some work that was being done on his property. The following year he enrolled in a different school and drove a U-Haul trailer, which he had loaded himself, back to Oregon. He returned to Alaska in March 1973. At no time did Maloney engage in part-time employment while in school, nor did he seek employment.

After instructing the jury as to the compensation to be allowed for future loss of earning capacity in the event of a finding of permanent disability, the trial judge instructed the jury as to damages for time lost from work from the date of the collision to date of trial as follows:

Similarly, if upon a consideration of all the evidence and under the Court's instructions, you should find that the Plaintiff John R. Maloney is entitled to recover from the Defendant Spruce Equipment Company, in arriving at the amount of the award you should determine the reasonable value of the time lost, if any, by Plaintiff John R. Maloney, from the date of the injury to the time of this trial wherein he has been unable to pursue his occupation. In determining this amount, you should consider the evidence pertaining to Plaintiff Maloney's earning capacity, his earnings, and the manner in which he ordinarily occupied his time before the injury, and find what he was reasonably certain to have earned in the time lost had he not been disabled.

Spruce objected to the instruction,[11] characterizing it as "to restrictive" and noting that Maloney "has a duty to pursue gainful employment, not necessarily that of a truck driver". To rectify the instruction in the eyes of Spruce, then, required either a modification in the emphasis of the instruction or an accompanying instruction pertaining to mitigation of damages. The instruction as given required the jury to compensate Maloney for his time lost "from the date of injury to the time of this trial *wherein he had been unable to pursue his occupation.*" The instruction concluded by requesting the jury to consider the evidence pertaining to Maloney's "earning capacity, his earnings, and the manner in which he ordinarily occupied his time before the injury, and find what he was reasonably certain to have earned in the time lost had he not been disabled." The jury was, in effect, instructed to award Maloney the amount he was receiving as a truck driver for the entire four-year period without regard to whether or not he endeavored to secure alternate employment or could have secured such employment.

of Alaska, 222 F.Supp. 671, 677 (D.Alaska 1963). *See also* Redman v. Department of Education, 519 P.2d 760, 769 (Alaska 1974); Anchorage Independent School Dist. v. Stephens, 370 P.2d 531, 533 (Alaska 1962).

11. The objection specified:
Want to object to that. It says down in the middle, ". . . value of any time lost, if any, by plaintiff John R. Maloney, from the date of his injury to the time of this trial, wherein he has been unable to pursue his occupation." And that seems to limit— you know, that's he's been unable to pursue his occupation as a truck driver or heavy-duty truck driver. We feel that's too restrictive. He has a duty to pursue gainful employment, not necessarily that of a truck driver.

In Long v. Newby, we set forth the standard to be applied in claims for time lost between the date of injury to the date of trial stating:

> The measure of damages is the difference between what would have been earned if the employment had not been wrongfully terminated and the amount which actually was *or reasonably should have been,* earned. . . . The jury was instructed that a person whose *employment is terminated must exercise reasonable care to minimize the loss* and that losses resulting from a failure of such care cannot be compensated (emphasis added).[12]

As given, the instruction erroneously failed to include language similar to that emphasized in the above quotation. As a result, the jury could have believed that they were required to award Maloney the full damages of the amount he would have earned by following his usual occupation as a truck driver during the four-year period, even though the evidence clearly indicated that during portions of this period he chose not to seek employment but engaged in personal activities such as vacationing, tending to his private properties, supervising work on those properties and taking extensive trips. In fact, Maloney conceded in his testimony that he was not claiming compensation for those periods of time although his attorney argued for the full amount of compensation without deductions.

■ In University of Alaska v. Chauvin,[13] we acknowledged that there is in Alaska a "duty" on the part of an injured party to "use reasonable efforts" to "avoid the consequences of injury done by another". Similarly, in Redman v. Depart-

ment of Education,[14] we quoted from Anchorage Independent School District v. Stephens:[15]

> It is a cardinal rule in the law of damages that a plaintiff, with an otherwise valid right of action, is denied recovery for so much of the losses as are shown to have resulted from failure on his part to use reasonable efforts to avoid or prevent them. This rule applies whether the action is in tort or breach of contract and is known as the avoidable consequences rule.

In *Chauvin* there was no evidence of whether suitable employment was available although an offer was made by the University which would have required a compromise of his claim. Redman had secured employment during a portion of the period between her contract termination and trial, and appropriate deductions were allowed from the amount that she otherwise would have earned. While Spruce did not show specific evidence as to work that was available to Maloney during the four-year period, it is not contended that he could not have secured some suitable employment although arguably he could not perform his prior work as a truck driver. The undisputed testimony suggested that he made no effort to secure employment and, at the least, for considerable periods of time engaged in recreation or gainful personal activities. Under these circumstances, we find that the instruction without modification in accordance with the standard set forth in *Long* was erroneous.

■■ While counsel for Spruce did not submit a requested instruction for mitigation of damages, the trial judge was alerted to the problem by the specific objection made to the instruction.[16] Nor do we find

---

12. 488 P.2d 719, 724 (Alaska 1971) (footnote omitted).

13. 521 P.2d 1234, 1239 (Alaska 1974).

14. 519 P.2d 760, 769 (Alaska 1974).

15. 370 P.2d 531, 533 (Alaska 1962) (footnote omitted).

16. In Reader v. Ghemm Co., 490 P.2d 1200, 1202 n. 1 (Alaska 1971), we stated:

> Reader has adequately preserved his right to urge error in the instruction. Reader objected to the instruction as given: . . . Reader also proposed an instruction on the loaned servant doctrine. His requested instruction was no better than the instruction

that the instruction was corrected by the general instruction requiring the plaintiff to prove "the nature and extent of the injuries and damages sustained by the plaintiff which were proximately caused by the negligence of the defendant". While the instructions must be regarded in their entirety, the general instruction regarding the plaintiff's burden of proof cannot cure the specific instruction which, in effect, directed the jury to award damages for the time lost to date of trial based on Maloney's usual wages as a truck driver. The instruction was erroneous as it neither referred to a deduction for the amounts that Maloney reasonably should have earned nor made any reference to his duty to exercise reasonable care to minimize the loss. Nor was the error trivial. Maloney's prospective wages during the four-year period amount to some $40,000–50,000. We accordingly must remand the case for a new trial on the issue of damages.[17]

Reversed and remanded.

given in terms of the concept of control, but we feel that his failure to request a correct instruction does not preclude his raising the issue on appeal. His objection is all that is required in order to comply with Rule 51(a), Alaska Rules of Civil Procedure. Reader's oral objection *was sufficient to put the court and opposing counsel on notice as to the defect of the instruction given* (emphasis added).
See also Pepsi Cola Bottling Co. v. Superior Burner Service Co., 427 P.2d 833, 837 (Alaska 1967).

17. City of Fairbanks v. Nesbett, 432 P.2d 607, 618 (Alaska 1967).