TOMM TWAIT, Plaintiff-Appellee, *v.* BRUCE OLSON, Defendant.—
(FORREST E. FARLEY, Defendant-Appellant.)

Third District    No. 81-54

Opinion filed February 26, 1982.—Rehearing denied April 6, 1982.

George C. Hupp, Sr., of Hupp, Irion & Reagan, of Ottawa, for appellant.

John F. Vickers, of Peter F. Ferracuti & Associates, of Ottawa, for appellee.

JUSTICE BARRY delivered the opinion of the court:

Plaintiff Tomm Twait received a severe permanent brain injury when a car driven by Bruce Olson in which Twait was passenger was struck from the rear by a car driven by defendant Forrest Farley while both were traveling north on a preferential highway known as the Leland Spur Road. Plaintiff brought this personal injury action against both Olson and Farley, and the jury returned a verdict in favor of plaintiff against defendant Farley for $550,000 and in favor of defendant Olson against plaintiff. Farley appeals from the judgment entered upon the verdict against him, asserting (1) that Farley should have been granted a directed verdict; (2) that the verdict was contrary to the manifest weight of the evidence; and (3) that eight evidentiary errors occurred during trial which either alone, or cumulatively, deprived Farley of a fair trial.

In order to consider the questions relating to the correctness of the verdict, it is necessary to set forth the factual circumstances of the accident. At about 12:15 a.m. on July 3, 1977, defendant Olson was driving his 1969 Camaro in an easterly direction along Stein Road approaching the intersection with Leland Spur Road. Both roads consist of only two lanes. Tomm Twait was a passenger in the front seat of the Olson vehicle. According to Olson, when he reached the intersection, he stopped at the

stop sign, and saw a car approaching about one-quarter mile away to his right. He shifted into first gear, and as he started to pull out and make a left turn onto Leland Spur Road, he estimated the on-coming car to be about one-eighth mile to the south. Olson's vehicle was struck from the rear by the Farley automobile extensively damaging both vehicles. Farley said that when he saw Olson's car in front of him, he slammed on his brakes. Resulting skid marks measured 129 feet to the apparent point of impact at the north edge of the intersection and an additional 144 feet north of that point where both vehicles came to rest. The total of the Farley skid marks was therefore 273 feet long. Farley testified at trial that he was traveling no more than 55 miles per hour, that he saw the Olson vehicle make a left turn from the west into his lane of travel, that at that time the Olson vehicle was about 100 feet in front of him, and that he applied his brakes.

The debris from the collision was in the northbound lane 33 feet north of the center of the intersection. The Olson car was still in first gear when it came to rest. James Walz, an eyewitness in a car traveling from the north on the Leland Spur Road, saw the Farley car approaching as Olson pulled onto the highway. He said the Farley car was "real close" when Olson pulled out and that Olson had not completed a 90-degree turn when he was struck in the right rear corner of his car.

Farley was driving an 8-cylinder 1973 Camaro and was accompanied by Cindy Catron, who was asleep. Twait's severe brain injuries resulted in lowered intelligence, impaired space perception, altered personality, impaired speech and coordination, and an inability to be employed or to care for himself. Twait was 17 years old at the time of the accident and had been a popular and successful high school athlete, and a good student.

There is no question of contributory negligence on the part of the plaintiff. Also, this trial took place during June of 1980 prior to the Illinois Supreme Court decision in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, which promulgated the doctrine of comparative negligence in all negligence cases in which trial commences on or after June 8, 1981.

Plaintiff's theory of liability was that both defendants were negligent in that defendant Farley was traveling at an outrageously excessive speed and that defendant Olson misjudged Farley's speed when he pulled out onto the Leland Blacktop in front of Farley's oncoming car. Olson's defense was that it was Farley's negligence that caused the accident and that Olson acted reasonably at the time he turned onto the Leland Blacktop. Farley, on the other hand, defended on the theory that he was traveling at a reasonable rate of speed along a preferential roadway, that Olson suddenly pulled out in front of his vehicle when he was only about 100 feet

south of the intersection, and that the collision occurred when Olson's vehicle had not yet completed its turn. The jury accepted Olson's version of the accident, thereby rejecting the testimony of Farley and his witnesses.

■■ Upon appeal Farley contends, first, that the trial court should have granted his motion for directed verdict because he (Farley) could not have been guilty of negligence under the circumstances where he was the driver of an automobile on a preferential highway with the right to expect any automobile approaching on the secondary road controlled by a stop sign to obey the stop sign and yield the right-of-way, as required by law. Farley relies upon *Hale v. Craven* (1970), 129 Ill. App. 2d 466, 263 N.E.2d 593, in support of his position. However, as *Hale* made plain, the driver on a preferential highway does not have an absolute right-of-way regardless of distances, speed, or other circumstances. (Accord, *Conner v. McGrew* (1961), 32 Ill. App. 2d 214, 177 N.E.2d 417.) In *Pennington v. McLean* (1959), 16 Ill. 2d 577, 583, 158 N.E.2d 624, 627, our supreme court said:

"[A] person approaching a preferred highway is not required to stop * * * long enough to permit *any* car that he observes on the highway to pass, regardless of its distance from the intersection. [Citation.] The statute requires only that the motorist confronted by a stop sign may, exercising reasonable care, proceed across the intersection after he has stopped and yielded the right of way to such vehicles on the through highway as constitute an 'immediate hazard.' [Citations.]

The Illinois decisions, however, do not provide a precise formula for determining whether a particular vehicle has conformed to set standards; that question must be determined by the jury [citations], and involves considerations as to relative speeds and distances of the vehicles from the intersection."

As this court noted in *Fincham v. Cooney* (1976), 42 Ill. App. 3d 719, 356 N.E.2d 445, *Pennington v. McLean* and *Conner v. McGrew* and other cases before 1967 were decided at a time when the test for directing a verdict was whether there was "any evidence" of negligence. That test was rejected in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, where the standard was held to be whether all the evidence viewed in the light most favorable to the nonmoving party so overwhelmingly favors the moving party that no contrary verdict could ever stand. In *Fincham v. Cooney* we went on to hold that the *Pedrick* decision did not change the standard of care required of a driver on a preferential highway and that the rule set forth in *Pennington v. McLean* and *Conner v. McGrew* is still valid.

The record in this case demonstrates substantial evidence of excessive speed on the part of Farley, indicating that he may have failed to

exercise reasonable care in approaching and proceeding through the intersection. Farley was familiar with the terrain, having traveled the Leland Blacktop many times and having farmed a field at that intersection. There was a dip some 262 feet south of the intersection big and deep enough to conceal an automobile and adjoining the dip along the west shoulder of the road was a ten foot high embankment. Farley's 8-cylinder vehicle was a 4-barrel carburetor, 327-cubic inch, high-performance automobile. Two residents who lived near the intersection testified that they were awakened that night by the loud roar of an engine which continued for about 10 seconds and which was followed by the squealing of tires, a crash, and then the tinkling of hubcaps on the roadway. Farley admitted that he never saw the headlights of Olson's car but rather sighted only his taillights just before the collision. The length of the skidmarks, particularly after the impact, and the amount of debris and damage to the vehicles are additional factors indicating the tremendous speed of Farley's vehicle.

■■ There was contradictory evidence, too, including Farley's testimony that he was traveling 55 miles per hour, and after reviewing all of the evidence, we find that there is evidence consistent with both plaintiff's theory and with Farley's theory, and, therefore, the case was an appropriate one for the jury to decide. (*Fincham v. Cooney* (1976), 42 Ill. App. 3d 719, 721-22, 356 N.E.2d 319, 321.) Farley was not entitled to a directed verdict.

Farley also argues that the verdict was contrary to the manifest weight of the evidence. From our previous discussion of the evidence, we think it clear that there was substantial and, in fact, abundant evidence to support the verdict, and no reversal is required on that basis.

Next we must examine the trial rulings which defendant Farley contends were erroneous. First, defendant insists that two occasions where plaintiff's counsel mentioned the word "insurance" were prejudicial to plaintiff's cause and should have been grounds for declaration of a mistrial. The initial use of the word "insurance" came during voir dire when one prospective juror said he thought he remembered plaintiff's counsel, Mr. Ferracuti, from another case, and counsel responded, "Are you sure it was not Mr. Raccuglia, he sometimes represents insurance companies?" Farley argues that Mr. Ferracuti implied to the jury that he does not represent insurance companies and thus that plaintiff was not insured. The other occasion came during closing argument when plaintiff's counsel was arguing that plaintiff would not only be deprived of future lost wages because of his inability to work but also of fringe benefits such as health insurance, dental insurance, pensions. Then counsel said, "He'll never buy insurance. Who is going to sell him liability insurance? He doesn't drive a car anyway. Who is going to sell him insur-

ance?" Plaintiff argues that the jury might conclude from this that defendant must have been insured since he was driving and since plaintiff said no one can drive without insurance. Actually plaintiff's counsel, in effect, said that no one buys insurance who does not drive. In both cases, different inferences could be drawn from the reference to insurance than the inferences plaintiff would draw, and thus in both situations, the matter was one for the exercise of the sound discretion of the trial court.

■■ Not every mention of the word "insurance" during a personal injury trial requires the court to declare a mistrial. In *Kitsch v. Goode* (1977), 48 Ill. App. 3d 260, 266, 362 N.E.2d 446, 451, the court reviewed the traditional rule against disclosure of insurance coverage and then observed:

> "With the passing of years, however, and the almost universal prevalence of automobile liability insurance, has come an increasing judicial tolerance toward references to insurance. Where a finding of liability has a complete basis in the evidence and the damage award is reasonable, the courts will conclude that the jury was not prejudiced by the remark."

Furthermore, we think it significant that neither mention of insurance here referred to defendant Farley's possible insurance coverage. It is an indication that defendant is insured that is particularly prejudicial. (*Cf. Pinkerton v. Oak Park National Bank* (1958), 16 Ill. App. 2d 91, 97-98, 147 N.E.2d 390, 394.) We cannot say that the trial court abused its discretion declining to declare a mistrial because of these two oblique references to insurance.

■■ Farley next contends that the trial court erred in permitting evidence to be introduced which indicated that Farley's family farmed the field at one of the corners of the intersection. One of the photographs which was introduced into evidence for the purported purpose of showing Farley's familiarity with the terrain included the field at the northwest corner which Farley stated he had personally farmed. He insists that this must have impressed the jury with the fact that he had the "deep pocket" in this case. There was no objection to the evidence, and no mention that Farley lived on the farm in question or that Farley or his family owned the farm. The number of acres involved was not mentioned. We can only conclude that the evidence here questioned was not admitted erroneously, and even if it were, any error was waived by Farley's failure to object.

■■ Farley's next assertion of error is the admission into evidence of a photograph of the Farley car after it had been considerably altered by the removal of its engine. Since two other exhibits adequately demonstrated the condition of the car after the accident, the introduction of a third photograph could only serve to inflame the jury, Farley argues, since the factual situation was distorted. The admission of photographic exhibits is a matter within the discretion of the trial court, and even where sub-

stantial changes in the appearance of a scene have occurred, a photograph is admissible if the changes were explained to the jury so that the photographs are correctly understood and not misleading. (*Kyowski v. Burns* (1979), 70 Ill. App. 3d 1009, 388 N.E.2d 770.) Here the jury was clearly advised as to the removal of the engine in the photograph in question, and so we cannot say that the trial court abused its discretion in receiving this exhibit in evidence. Furthermore, even if the exhibit's admission was erroneous, any error would not be prejudicial since the exhibit was merely cumulative of the matters portrayed in other exhibits.

Additionally Farley contends that he was prejudiced when plaintiff attempted to cross-examine him as to a supposed duty to decrease his speed as he approached the intersection. The question was objected to, and Farley's objection was sustained. Since the court instructed the jury as to the applicable law, we fail to see how Farley can claim to have been prejudiced by plaintiff's question.

■■ Next, Farley argues that it was error to permit testimony concerning the fact that Farley's car was a "high performance" vehicle capable of high speeds. He contends that such testimony had no probative value as to the actual speed of the car at the time of the collision. We think, to the contrary, that the type of engine was probative of the capability of Farley's vehicle to reach the speed necessary to cause the amount of damage that was done and further was corroborative of the testimony concerning the loud noise of the engine which awakened two neighbors just prior to the crash. The court did not err in overruling Farley's objection to this evidence.

■■ Farley also assigns as error a portion of plaintiff's closing argument which allegedly singled out one or two jurors by age category. Of course, it is improper to address individual jurors in an attempt to play upon their personal circumstances and fears. Here the comment came after counsel had told the jury that they would have to rely upon their experience to determine what wages a young man such as plaintiff might be expected to receive on the average. Counsel then said, "We have a 20-year-old or two, I think on this jury. We have at least one." Counsel then discussed possible starting wages for factory work. We would agree that a direct reference to particular members of the jury would be improper, but we cannot say the comments here were a direct reference, or in any event, amounted to reversible error. In the context of the entire trial, these remarks could hardly be said to have prejudiced Farley so plainly as to justify a new trial.

Farley's next assertion of error is plaintiff's final argument reference to inflation. Counsel asked the jury to consider what wages were 10 or 15 years ago, to consider that they have doubled since that time, and to think of what they would be 10 years from now. Generally, if there is other proper evidence sufficient to support the verdict, a reviewing court will

not consider as error evidence or arguments of future inflationary trends which may be speculative. (*Kapelski v. Salton & Southern R.R.* (1976), 36 Ill. App. 3d 37, 46-47, 343 N.E.2d 207, 214.) Since Farley also claims that the award of $550,000 damages was excessive and contrary to the manifest weight of the evidence, we must examine the excessive damages issue before considering whether the indirect reference to inflationary factors was reversible error.

■■ Interestingly, Farley does not dispute any of the evidence concerning medical expenses or injuries, but rather contends that the trial errors previously discussed were calculated to cause the jury to determine damages under the influence of passion and prejudice. The record discloses that plaintiff asked for damages in excess of $1,000,000; that medical expenses to date exceed $49,000; that plaintiff's life expectancy is 50.5 years; that plaintiff is permanently and severely incapacitated from performing gainful employment and from caring for himself; that his intellect, emotions, memory, and spatial perception are seriously and permanently impaired. The photographs of plaintiff before and after the accident and the testimony of medical and family witnesses make clear that plaintiff's injuries were so devastating as to totally destroy any hope for a useful life. Applicable to this case are the words of the Supreme Court of Illinois affirming an award of $750,000 to a 28-year-old plaintiff who lost both legs: "One cannot certainly assess in financial terms these human tragedies, but one can conclude that the award here was not excessive." (*Raines v. New York Central R.R. Co.* (1972), 51 Ill. 2d 428, 444, 283 N.E.2d 230, 239.) In *Raines,* as here, the court was called upon to consider the propriety of a reference to inflation, and the court ruled that the verdict was amply supported by other evidence. We believe the same to be true in the case before us.

Finally, defendant Farley asserts that the cumulative effect of the errors alleged deprived him of a fair trial. As our previous discussion of Farley's contentions indicates, we believe that he did receive a fair trial and that any errors were either waived or were so inconsequential as to have not been prejudicial—whether considered singly or together.

For the reasons stated, we affirm the judgment of the Circuit Court of La Salle County.

Affirmed.

SCOTT, P. J., concurs.

JUSTICE HEIPLE, dissenting:

Shortly after midnight on July 3, 1977, the plaintiff Tomm Twait was a passenger in a car driven by defendant Olson. Olson's auto had been

traveling on a gravel road known as Stein Road. A stop sign is located on Stein Road where that gravel road intersects a blacktop, preferential highway called Leland Spur Road. After completing his stop at the sign, Olson started his turn into the northbound lane of Leland Spur Road. At that precise moment, defendant Forrest Farley was motoring north on Leland Spur Road and approaching the Leland-Stein intersection from the south. There are no stop signs on Leland Spur Road. As defendant Olson was completing his turn into the northbound lane of Leland Spur Road, a collision occurred with the Farley auto that was proceeding north in that lane.

Although both vehicles sustained serious damage, none of the occupants of either vehicle suffered a broken bone. The defendant Farley, the defendant Olson and Farley's passenger, Cindy Catron each sustained minor lacerations. They were released from the hospital the following day. Tomm Twait, however, sustained brain injury which resulted in extensive and apparently permanent disability. Twait brought suit against Farley and Olson for his injuries. Twait claimed that Farley was negligent in traveling at an excessive speed on Leland Spur Road. Olson, Twait claimed, was negligent in pulling out onto Leland Spur Road in front of Farley's oncoming car.

The jury returned a verdict for Twait against defendant Farley in the sum of $550,000. The jury also found in favor of defendant Olson and against the plaintiff Twait. Judgment was entered upon the verdict against Farley. On appeal Farley's complaints are several: (1) the court erred in failing to grant his motion for a directed verdict at the close of all the evidence; (2) that the jury verdict was contrary to the manifest weight of the evidence; (3) that the conduct of the plaintiff's attorney during the trial deprived him of a fair trial. Defendant Farley specifies several occasions of courtroom conduct as error. All were properly objected to by defendant Farley during trial. On several occasions, defendant Farley moved for a mistrial because of the prejudicial effect of the errors. All such motions were denied by the court. Defendant Farley moved for a mistrial at the close of trial and in his post trial motion. Again, his motions were denied.

Recognizing that the trial court has great discretion in such matters, the majority affirms the trial court's various evidentiary rulings and denial of defendant Farley's motions for mistrial.

I do not agree with the majority; the complained-of conduct by the plaintiff's attorney and the erroneous evidentiary rulings combined to deprive the defendant Farley of a fair trial. Farley's motion for a mistrial should have been granted.

A review of the entire record suggests that plaintiff's counsel orchestrated a trial full of error. The trial was calculated to prejudice the

defendant Farley by the introduction of impermissible or marginally permissible trial tactics. Most of the errors standing alone would not warrant a new trial. Plaintiff's counsel knew this as he was a seasoned trial attorney. He timed the errors so as not to enflame the trial judge, yet he presented to the jury impermissible matters with great subtlety and suggestion. He was sly; his strategy succeeded. Every motion for a mistrial was denied. The plaintiff won most evidentiary rulings, although in several instances the trial judge acknowledged that the complained-of evidence was only marginally admissible.

While a trial judge may have difficulty realizing the cumulative effect of numerous trial errors, a court of review does not labor under the same handicap. As a court of review, we sit in an ideal position to view the totality of trial errors. At some point the cumulative effect of the trial errors and imperfections become reversible error. The instant case provides a perfect example of that principle.

The trial repertoire of plaintiff's counsel included subtle as well as obvious error. At one point he asked a highly prejudicial and improper question to defendant Farley that as a seasoned attorney he knew was wrong. He knew the objection would be sustained. It was. But plaintiff's counsel succeeded in asking the question of whether Farley knew he had a duty to slow down as he approached the Leland-Stein intersection. This question suggested to the jurors that such a duty existed. Such duty does not exist. Farley was traveling on a preferential highway. His travel through the intersection was not impeded by stop or yield signs. If a motorist on such a throughway as Leland Spur Road had to decrease his speed so he could stop in time to avoid collisions with vehicles which ignore stop signs on intersecting roads, the purpose for such preferential highways would be thwarted. Farley had no duty to decrease his speed as he approached the intersection. Plaintiff's counsel knew that. The effect of such a question was clearly prejudicial.

Another trial error, manifestly prejudicial was the admission into evidence of a photograph of the Farley vehicle after it had been considerably altered. The majority finds no error in the admission because the changes were brought to the attention of the jury. The purpose of the photo was to demonstrate the condition of the Farley vehicle after the accident. First of all, two other photographic exhibits demonstrated the car's condition after the accident. In the complained-of photo, not only was the engine removed as the majority notes, but the hood was removed from the car, the windshield was completely shattered out, the front tires were removed, and the interior of the car was removed. It presents a false and gross distortion of the accident. What appears in the photo is the car after it was salvaged of anything of value. It does not depict the car after the accident. The damage represented by the offending photo suggests an accident of far greater magnitude than

actually occurred. This lends support, albeit false, to plaintiff's theory that Farley was speeding. For this reason, its effect, subtle and insidious, was highly prejudicial to defendant Farley. Its admission into evidence was unnecessary; two other photos clearly depicted the car after the accident. Moreover, this false photo was nine times larger than the two accurate photos.

The majority also claims that any error in its admission would not be prejudicial since the photo "was merely cumulative of the matters portrayed in other exhibits." This just isn't so. The photo was not cumulative of anything portrayed in other exhibits. The size of the photo and the distortion represented therein were prejudicial to the defendant Farley. To admit it into evidence was error.

During the voir dire, one of the jurors mentioned that his wife had a workmen's compensation case and he thought the plaintiff's counsel had represented the respondent. Whereupon plaintiff's attorney added, "Are you sure it was not Mr. Raccuglia, he sometimes represents insurance companies?" A motion for mistrial was then made by both defendants on the basis that the remark carried with it the innuendo that plaintiff's counsel never represents insurance companies and that only lawyers who represent defendants represent insurance companies, and that the remark could serve only to enflame the jury. This was a deliberate and needless injection of the matter of insurance into the trial. The motion for a mistrial should have been granted.

During closing argument, plaintiff's counsel raised the matter of insurance, again needlessly. Plaintiff's counsel in discussing damages stated: "* * * and the boy is never going to have fringe benefits. He'll never buy insurance. Who's going to sell him liability insurance? He doesn't drive a car anyway. Who's going to sell him insurance?"

Also during his final argument, plaintiff's counsel stated, "We have a twenty year old or two, I think, on this jury. We have at least one. In a lifetime, I'm talking about factory work, Caterpillar, Libbey-Owens-Ford, there are better jobs and there are poorer jobs, perhaps but nowadays a young man can start for $10,000 and in a short time he can make 15 and $20,000 nowadays and I'll tell you another thing; what were wages ten years ago and fifteen years ago? And they're twice that now or close to it. So who's to say what a young man will be earning who's twenty years old today, ten years from now?"

Immediately following the plaintiff's argument, the defendant Farley moved for a mistrial, first on the basis that plaintiff's attorney in his argument singled out a juror, secondly that he discussed inflation, and thirdly that he raised the insurance question by telling the jurors that if one cannot get liability insurance he cannot drive a car. The motion was made on the basis of the prejudicial effect of these errors, whether considered individually or cumulatively. The trial court denied the motion but said,

202

"I think all three points fringed on being improper arguments. The real question is whether or not the prejudice flowed from them to such an extent to determine a mistrial."

The rule in Illinois is that the existence of insurance coverage is not to be presented to the jury in a personal injury case. (*Horst v. Morand Bros. Beverage Co.* (1968), 96 Ill. App. 2d 68.) However, where the subject of insurance is introduced through inadvertence by someone other than plaintiff's counsel, the declaration of mistrial is not appropriate. Thus, where plaintiff's counsel deliberately introduces the subject of insurance, not once but twice, reversible error has been committed and a mistrial should have been declared.

The courts have clearly disapproved of counsel addressing jurors individually during argument holding such conduct to be improper. By this tactic the plaintiff's attorney asked the jurors to place themselves in the place of the plaintiff Tomm Twait. This tactic is wrong because of the improper influence it has upon the jury.

Plaintiff's attorney in his final argument asked the jury to consider what wages were 10 to 15 years ago and that since that time they have doubled. He further asked the jury to speculate as to what wages would be 10 years from now. No other reading of the language employed could lead one to believe that he was not asking the jury to consider inflation. The appellate court has held that the introduction of evidence of inflation at the trial is improper as being speculative in nature. Certainly if the introduction of such evidence is improper, the mentioning of it during final argument is likewise improper for the same reason.

While the intentional injection of insurance into this case would be grounds alone to declare a mistrial, the cumulative effect of the other errors clearly deprived defendant Farley of a fair trial. If these matters are not discouraged by the trial judge or by this court on appeal, then we have lost control of the trial. If such conduct is condoned, as the majority sees fit to do, then personal injury litigation becomes a free-for-all where anything goes. The error of injecting the matter of insurance needlessly into this case, not once but twice, is particularly grievous. This and the other errors taken cumulatively mandate that a new trial should be ordered.